# THE CYCLOPS.[1]

## MAINE STEAM-SHIP CO. *v.* THE CYCLOPS.

*(District Court, S. D. New York. January 20, 1891.)*

COLLISION—BETWEEN STEAMERS—RULE OF THE STARBOARD HAND—MARGIN FOR SAFETY.
    The steamer C. C. was lying nearly stationary in the East river, 100 or 200 feet off pier 36, bow down stream, and holding herself against the strong flood-tide. The tug Cyclops, with a car-float on her starboard side, rounded in the river to land the float at pier 27. The tug's witnesses stated that when she was some 100 or 200 feet from the steamer she backed strong. The master of the steamer, not knowing that she was backing, hailed her to go ahead, strong. The tug did so, but the car-float nevertheless struck and broke the stem of the steamer. The situation and purpose of the steamer were from the first manifest to the tug. The latter, by backing when out in the river, could have turned down stream, and kept away from the steamer. *Held,* that the case was not to be decided upon the uncertain possibilities of the short interval before collision, but that the tug, being the principal moving vessel, and having the steamer on the starboard hand, was bound seasonably to keep out of the latter's way by a sufficient margin for safety, and not to come into dangerous proximity to the steamer which was maneuvering near the dock; that the hail of the master of the steamer did not change the obligation of the tug; that his hail was an error *in extremis;* that the tug was solely responsible for the collision.

In Admiralty. Suit for damage by collision.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

*Carpenter & Mosher*, for libelant.
*Tracy, McFarland, Ivins, Boardman & Platt*, for respondent.

Brown, J. On the 15th of September, 1890, as the steam-tug Cyclops, having a car-float on her starboard side, was rounding in the East river just above the bridge, to land her tow against the strong flood-tide at pier 27, the starboard quarter of her tow struck against the stem of the libelant's steam-ship Cottage City, which was lying nearly at rest 100 or 200 feet off pier 36, having dropped down from pier 38 above, about 300 feet in all, to allow the City of New Bedford to make her dock there. The current there at the strength of the ebb is from two to three knots. It is said to have been running unusually strong that day, and the Cottage City could only hold her own, while waiting in the tide, by keeping her propeller more or less in motion, and this was doubtless accompanied by some change of position. The defendant contends that when from 100 to 150 feet distant from the bows of the steamer, and heading some 3 or 4 points down river, and towards the New York shore, the tug was backing strong, and would have swung around so as to head directly down river, and have come along side the steamer without damage, had not the captain of the latter hailed the pilot to go ahead strong, stating that he was backing; whereupon the pilot put his engine ahead, and collision resulted. It is now contended that the steamer was not backing, so that the float by going ahead was carried by the tide across the steamer's head, and broke her stem. The parties entirely disagree in their theories of what might have been done, or should have been done, at the time when the steamer's hail to the tug was given; the witnesses for the steamer testifying that, as the tug was then going, she would certainly have come in collision, which the tug denies. There is no doubt that the captain of the steamer acted upon that belief, and ordered his engine reversed either before or at the very time of his hail. He may have been incorrect in supposing that the tug could not avoid the steamer by backing. He testified that he did not know she was then backing. One of the defendant's witnesses considered that the pilot of the tug ought not to have gone ahead on the steamer's hail, but to have kept on backing nevertheless; while the pilot considered himself justified in acting in accordance with the request of the steamer, and that the steamer thereby took the risk of the result, and that the collision would have been avoided had the steamer made any effective backing.

Neither the rules of navigation, nor the rules of decision in the courts are designed to make the determination of causes turn upon points so fine and uncertain as these. The faults, if any, are to be sought further back. It was the business of the tug, not only as the principal moving vessel, but as having the other upon her own starboard hand, to keep out of the way of the steamer. Whatever change of position the steamer was making was but small. She was in the immediate vicinity of the docks, moving slightly, for the purpose of accommodating the other vessel in docking, or holding her place as well as she could in

the strong tide near the end of the piers, while the other vessel was reaching her berth. Her situation and purpose were sufficiently plain and intelligible to the Cyclops, and it is not claimed that this purpose was not seen and understood. It was the duty of the Cyclops, therefore, seasonably to keep away from her by a sufficient margin for safety, so to admit of all such small changes of position as might be necessary to the steamer, and all such changes as in the present case are shown to have been made by her, and not to come into dangerous proximity. *The Carroll*, 8 Wall. 302; *The Reading*, 43 Fed. Rep. 398; *The City of Springfield*, 29 Fed. Rep. 923; affirmed, 36 Fed. Rep. 568; *The Western Metropolis*, 6 Blatchf. 210–214. The testimony for the Cyclops leaves no doubt that she might easily have done so. If, when she was within 100 or 150 feet of the steamer, she could by backing have swung 4 points more to port, while the tide was carrying her that short distance to the steamer, as her witnesses now claim, it is plain that she had abundant opportunity, many times over, for turning well down river and keeping away from the steamer during the much greater interval that elapsed after she was in mid-river, and had started ahead, since even then she was heading somewhat down river, as her witnesses state. The above consideration alone is sufficient to charge the Cyclops with fault. In effect, though having plenty of room to keep clear of the steamer, she did not do so by a sufficient margin to allow for the necessary and proper changes of position by the steamer in maneuvering near the docks, against which it was the duty of the tug to provide. *The Osceola*, 33 Fed. Rep. 719; *The Mary Powell*, 31 Fed. Rep. 622; affirmed, 36 Fed. Rep. 598.

I do not think the steamer is proved in fault. The statement of the captain that he was backing, or had rung the bell to back, at the time when he hailed the tug is proved by disinterested witnesses. It is not necessary to determine whether his hail to the tug to go ahead was best or not. His hail did not bind the tug, or transfer her obligations to the steamer. The situation was *in extremis*, the vessels quite near, and the tug drifting rapidly in the strong tide towards the steamer's bows. A mistaken order or a mistaken maneuver under such circumstances is not to be charged as a fault. The blame lies with the one who wrongfully brought about the faulty situation. *The Maggie J. Smith*, 123 U. S. 349, 355, 8 Sup. Ct. Rep. 159. Finding that to be in the Cyclops only, the libelant is entitled to a decree, with costs.