## THE HORATIO HALL.

(District Court, S. D. New York. January 27, 1904.)

1. COLLISION—STEAMER LANDING AT PIER—INATTENTION TO PASSING VESSELS.

A steamer *held* in fault for a collision in East River while she was maneuvering to make a landing at the pier, with the help of a tug, on the ground of her inattention to other vessels in the river, and that she made a sudden swing, throwing her head out into the river, and striking a tug which was assisting in towing a steamship, when if she had delayed the movement until the tug passed her way would have been clear.

2. SAME—CONTRIBUTORY FAULT—FAILURE TO KEEP IN MIDDLE OF EAST RIVER.

The fact that tugs in taking a steamship from a bulkhead on the Brooklyn side of East River, and in getting her headed down stream, were carried with their tow by the flood tide within 500 or 600 feet of the Manhattan shore, the river being at the place some 1,400 feet wide, is not such a violation of the state regulation requiring vessels to keep as near the middle of the river as possible as to render them in fault for a collision which was caused by the plain fault of the other vessel.

3. SAME—STARBOARD HAND RULE—SPECIAL CIRCUMSTANCES.

A steamer passing down East River overtook and passed another steamer in tow, and while maneuvering to effect a landing at a pier swung around and came into collision with one of the towing tugs. *Held*, that the rule requiring a vessel having another on her starboard hand to keep out of the way did not apply to the tow, but that the case was one of special circumstances, falling within article 27 of the rules for harbors and inland waters (Act June 7, 1897, c. 4, 30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]).

In Admiralty. Suit for collision.

James J. Macklin, for libellant.
Carpenter & Park, for claimant.

ADAMS, District Judge. This action was brought by the libellant, McCaldin Brothers Company, to recover the damages caused to its steam towing lighter, James S. T. Stranahan, by collision in the East River, with the steamer Horatio Hall, about 4 o'clock P. M. on the 28th day of August, 1901. The Stranahan was engaged with two other tugs, the William J. McCaldin and the James A. Garfield, in towing the steamship Neptune, down stream from Arbuckle's Stores, Brooklyn. The Stranahan was made fast on the Neptune's starboard side, the sterns being about even. The Garfield was made fast on the Neptune's port side aft, and the McCaldin was ahead on a hawser, about 30 fathoms long. The Neptune was about 300 feet long and light. The Hall was bound from Portland, Maine, to pier 32, at the foot of Pike Street. The tide was flood, running about two knots. The weather was clear.

The Neptune had been lying at a bulkhead at Arbuckle's Stores, Brooklyn, between Adams and Jay Streets, headed down the river. While at the bulkhead, she was several hundred feet above the place of collision. When the tugs pulled the steamship out and got her

straightened down, she was somewhat on the Manhattan side of the middle of the river, having been carried there by the tide, which, at this point, tends a little across the river. The Hall was then coming down the river and passed the Neptune and the tugs alongside of her but did not reach the McCaldin. The Hall went somewhat below pier 32. She was being aided by the tug President, which ran a line of about 20 fathoms, from the port side of the Hall to her own after bitts. The President then went around on the starboard side of the Hall and commenced pulling. The effect of this was to haul the stern of the Hall down the river and throw her bow up the river. During this manoeuvre, the engine of the Hall was working backwards and forwards, so as to get her in a right position to make a landing on the west side of pier 32. In the meantime, the Neptune and the tugs were making slow progress down the river, going at the rate of about two knots over the ground. As the Hall swung around, those on the McCaldin noticed the danger of a collision and blew some alarm toots just before the contact. Those on the Hall had concluded, however, that there would be room enough for her to make the swing and it was too late when she was warned by the toots, to effectively change her manoeuvre. She continued the swing, with the result of bringing her port stem, in violent collision with the Stranahan's starboard side, seriously injuring the latter. The collision happened off the Bridgeport pier, which is two piers below pier 32. The Hall was then heading across and the tow down the river.

The libellant charges the Hall with fault (1) in not keeping a proper lookout; (2) in permitting her head to swing out into the river; (3) in not giving a signal or warning of any kind, and (4) in not having sufficient assistance to dock her properly without injury to other vessels.

The claimant alleges that the collision occurred through the failure of the tugs to keep the tow as near as possible to the middle of the river and in allowing it to sag over with the tide beyond the middle of the river and too near the New York shore, and further that having the Hall on her own starboard hand, the tugs were bound to keep out of the way.

The testimony requires me to sustain the libellant's first three charges. The Hall's navigators were apparently more concerned in making her pier than avoiding other craft in the river. They were nearly all aft and apparently did not see the Neptune and tugs until the collision was imminent and practically unavoidable. If proper attention had been given to the river, as well as the landing, it would have been seen that the tow was in the way of the Hall's manoeuvre. She was only required to wait a short time for the tow to pass out of the way, when she could have proceeded with safety. Instead of doing so, she swung her head rapidly up the river, without seeing what was in the way.

It is strongly urged that the tugs were in fault for being on the New York side of mid-channel. While those on the tugs testify, generally, that the tow was in the middle of the river, rather on the Brooklyn side, I conclude it was somewhat on the Manhattan side, but not enough to constitute such a palpable violation of the state statute requiring vessels to keep as near the center as possible, as would warrant

a division of the damages, in view of the plain faults of the Hall, even if the tugs could be held, for being set across the river by the tide, before they fairly got started towing. The collision probably occurred between 500 and 600 feet from the Manhattan shore. The river is about 1400 feet wide at the place and the tow was not so far away from the middle as to constitute a fault, under the circumstances. There was no time for the tugs to avoid the collision on account of the Hall's quick swing.

The claimant, in invoking the starboard hand rule, cites The Cyclops (D. C.) 45 Fed. 122. There, a moving vessel was held in fault for a collision with one of the steamers of the Portland line, in the same vicinity, and the rule was applied. In that case, however, the steamer was practically at rest, and the tow was moving towards her from below. Here, the Hall overtook and passed the tow, and the libellant claims that it is a case within the rule applicable to overtaking vessels, rather than the starboard hand rule. Neither of the rules governs, in my judgment, as the collision was caused by the Hall's premature swing up the river, making it a case of special circumstances, under article 27 of the rules for harbors and inland waters (Act June 7, 1897, c. 4, 30 Stat. 102 [U. S. Comp. St. 1901, p. 2884]).

Decree for the libellant, with an order of reference.