## THE NEW YORK.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

### No. 83.

SHIPPING (§ 81*)—LIABILITY OF VESSEL FOR INJURIES CAUSED BY SWELL.

The fact that a scow lying at a bulkhead on the Hudson river, when tossed by the swell of a passing steamer, struck on some unknown projection on the bulkhead and was injured, does not establish negligence on the part of the steamer which renders her liable for the injury, where

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it appears that she had passed the place for years on regular trips at the same rate of speed without causing injury to any vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 345; Dec. Dig. § 81.*]

Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

Appeal from the District Court of the United States for the Southern District of New York.

Olcott, Gruber, Bonynge & McManus and Harrington Putnam, for appellant.
Wilcox & Green, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge.   May 28, 1907, the flat-bottomed scow Mary Bulger, 100 feet long, 27 feet beam, was lying with her starboard side alongside the bulkhead at Rodgers Island in the Hudson river, loading ice.   At about 11 o'clock the steamboat New York passed down the river on one of her regular daily trips.   In accordance with the usual practice the chute between the scow and icehouse was lifted as the steamboat approached, so that it should not injure the scow when she began to rock in the swells that would follow.   The swells drew the scow off the bulkhead and threw her back on it twice.   No line was parted, although it was said a fender was broken.   After the swells died out the chute was hooked in again and the loading continued; no one suspecting that any damage had been done.   In about an hour it was discovered that the scow was filling with water.   She was entirely seaworthy, only 3½ years old, and her bottom was composed of planks running across from side to side without any keel.   No damage was done to her side.   No seams were started, nor any injury sustained, except that the starboard end of a single plank had been pulled down about two inches from the side timbers; five spikes being still in place, but partly drawn out.   The trial judge concluded, and we quite agree with him, that the plank must have been started by striking against the bulkhead at a point where there was probably some projection, which caught it as the boat was moving.

The New York had been running past this icehouse for years without doing any damage to boats lying at the bulkhead.   The libelant contends, and we may admit, that her speed was 22 miles an hour.   It is quite true that it would be no defense to her, if she caused injury by her swells, that she was going at her usual rate of speed; but those in charge of her had no reason to anticipate that swells which had done no harm for many years would do it on this occasion, and should not be held at fault because of damage caused by the existence of a projection of which no one, so far as it appears, had any notice.   It is said that no proof was made that there actually was such a projection; but the burden of proving negligence lies on the libelant, and we think, under the circumstances of this case, it cannot be inferred from the mere fact of the injury.

The decree is reversed, but, because of defenses set up which were wholly unsustained, with costs of this court only.

NOTE.—The following is the opinion of Hough, District Judge, in the court below:

HOUGH, District Judge. Eagan seemed to me a wholly disinterested witness, and since the trial his evidence has been read over to me. He declared that when the New York passed there were at least 400 tons of ice in the Bulger, so that she was more than half full, and, further, that this quantity of ice would fill her hold to the height of quite five feet. Eagan's testimony is, I think, entirely consonant with that of the Bulger's master. The facts, therefore, are that a barge, comparatively new and in good condition, was lying aground at a place where she had a right to be. The New York, passing at her usual speed and on her usual course, created swells of such size that the Bulger was lifted from the ground and dashed against the bulkhead wall. The contact with this wall does not seem to have been unusually severe; that is, more severe than the swells of such a vessel as the New York, passing at about 16 miles an hour, would ordinarily cause. No injury was immediately discovered; but, as the boat was aground, leakage would not be discovered by any settling in the water. It is therefore natural that no leak should have been suspected until the water rose above the cargo, and this accounts for the absence of investigation until after noon time. The proven fact is that she leaked at least five feet in about two hours. Such extreme leakage would be easily accounted for by the injury subsequently discovered—i. e., the starting of a bottom plank—and that bottom plank was in my opinion started by striking against the bulkhead wall at a point where there was probably some projection therefrom.

Except for the quality of the boat, the circumstances are very like those of Cornwall v. The New York (D. C.) 38 Fed. 710. So far as the law of this case is concerned, there is nothing that I can add to the opinion just filed in The Hendrick Hudson (D. C.) 163 Fed. 862.

Decree for libelant, with costs, and an order of reference, unless the amount of damages be agreed upon.