## THE PERSIAN.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

No. 144.

1. COLLISION ⬥�singen19—FAULTS—CONTRIBUTORY FAULT.
   Where the faults of one vessel were so gross as to fully account for a collision, any doubts as to the proper management of the other should be resolved in her favor.
   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 17; Dec. Dig. ⬥�singen19.]

2. COLLISION ⬥�singen82—STEAMSHIPS CROSSING IN FOG—EXCESSIVE SPEED.
   One of two crossing steamships held solely in fault for a collision at sea in a dense fog; it being shown that she was going at full speed across the bows of the other, which was proceeding slowly and carefully,

and had stopped and reversed on hearing the signal of the approaching vessel. ·

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 170–174; Dec. Dig. ☞82.

Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal by the Great Northern Paper Company, owner of a cargo of paper which was being carried by the steamer Millinocket from Stockton Springs, Me., to New York via Boston, from a decree dismissing its libel against the steamer Persian. At about midnight on July 24, 1913, the Millinocket collided with the Persian, a large, iron passenger steamer which was on her regular voyage from Philadelphia to Boston. The place of the collision is about two miles N N E of Pollock Shoals Lightship. The stem of the Persian struck the Millinocket a glancing blow on the starboard quarter, causing her to leak so badly that she put into Vineyard Haven in a sinking condition. The negligence of the Millinocket is not disputed but the libelant appellant insists that, being an innocent party, it is entitled to recover against the Persian if the latter is wholly or partly in fault for the collision, leaving the owners of the Persian to recoup half the damages from the Millinocket.

Edward E. Blodgett and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for appellant.

Van Iderstine, Duncan & Barker, O. D. Duncan, and Daniel H. Hayne, all of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). [1, 2] The negligence of the Millinocket, if not actually admitted, is proved by such an overwhelming weight of testimony that it need not be considered on this appeal. The only question here is, Did any fault on the part of the Persian contribute to the collision? The faults of the Millinocket were so glaring, so numerous and so fully do they account for the disaster that the court should not be particularly astute in the endeavor to discover some contributing fault on the part of the Persian committed at a time when inerrable judgment is not to be expected. A master seeing a steamer emerge from a dense fog at full speed headed directly across his course can hardly be expected to use the same discernment and caution as if he had been aware of the approaching vessel's course and speed. The language of the Supreme Court in The Umbria, 166 U. S. 404, page 409, 17 Sup. Ct. 610, page 612 (41 L. Ed. 1053), is directly applicable. The court says:

"Indeed, so gross was the fault of the Umbria in this connection, that we should unhesitatingly apply the rule laid down in The City of New York, 147 U. S. 72, 85 [13 Sup. Ct. 211, 37 L. Ed. 84], and The Ludvig Holberg, 157 U. S. 60, 71 [15 Sup. Ct. 477, 39 L. Ed. 620], that any doubts regarding the management of the other vessel, or the contribution of her faults, if any, to the collision, should be resolved in her favor."

See, also, The Victory & Plymothian, 168 U. S. 410, 18 Sup. Ct. 149, 42 L. Ed. 519; The Mexico, 84 Fed. 504, 28 C. C. A. 472.

The argument advanced to demonstrate the Persian's fault is based largely on conjecture and is contrary to the facts conceded or established by a clear preponderance of proof. The Persian carried passengers as well as cargo. Her log shows that she was proceeding with care and caution. The collision occurred at 12:15. During the preceding 22 minutes her log shows that she was proceeding slowly and that she stopped at 11:55, at 12:01, at 12:12 and that at 12:14 she was backing full speed astern. The engine log during this period shows that she stopped 10 minutes and was proceeding slowly 11 minutes. It is not easy to see what more a prudent navigator could have done. He did not know of the presence of the Millinocket, but he knew he was in dangerous waters and had heard whistles ahead. His duty to his ship and to the lives intrusted to his care required that he should proceed with the utmost caution and we think the evidence proves that he did so. The argument to the contrary is based largely upon guesswork and presumption. The testimony is clear that when the Persian first heard the two whistles from the Millinocket it was 12:12. The Persian then signaled to stop and two minutes later she was backing full speed astern. Her master testifies that immediately after he had answered the Millinocket's two whistles he saw her "masthead range lights and green side lights come out of the fog a little on my port bow. I should judge about the length of a ship away, probably a little more, possibly 400 feet. When I saw him I reversed, backed engine in an emergency, full speed."

The testimony amply justifies the finding of the trial judge that when the collision occurred the Persian was "nearly stationary." It is unnecessary to discuss the evidence further in detail; taken in its entirety it fully justifies the finding of Judge Smith, who is an admiralty lawyer of wide experience, who had the advantage, which an appellate tribunal can never have, of seeing and hearing the witnesses. Of course there are contradictions and disagreements upon minor and collateral issues. This is generally so where questions of fact are being considered and especially so where a collision in a fog is being investigated. Naturally, and almost unconsciously, the witnesses, even though passengers, are biased in favor of the vessel which carries them and their testimony must be weighed in the light of this well-known tendency. We are, however, fully convinced, as before stated, that the faults of the Millinocket fully account for the conduct of the Persian when almost in the jaws of collision and that the decree of the District Judge in finding her solely in fault is amply sustained by the proof.

The decree is affirmed.