### THE JOHN G. McCULLOUGH.

### THE BEGONIA.

(District Court, E. D. Virginia. March 20, 1916.)

1. COLLISION ⊕71(3)—MOVING AND ANCHORED VESSELS—ANCHORAGE IN CHANNEL.

   Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 (Comp. St. 1913, § 9920), providing that it shall not be lawful to tie up or anchor vessels in navigable channels in such manner as to prevent or obstruct the passage of other vessels, does not absolutely forbid anchoring in channels, and a vessel anchoring at a point in a channel where, notwithstanding such anchorage, other vessels navigating with the care the situation requires can safely pass, neither violates the statute nor is chargeable with fault which renders her liable for a collision, even though in some degree she obstructs the channel.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⊕71(3).]

2. COLLISION ⊕71(2)—MOVING AND ANCHORED VESSELS—FAULT.

   A collision at night between the steamship Begonia, anchored in Chesapeake Bay a mile from Thimble Light, and the steamship McCullough bound for Newport News, held due solely to the fault of the McCullough

for negligent navigation; the evidence showing that the Begonia carried proper lights and that there was ample room to pass on either side of her.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ☞71(2).]

3. COLLISION ☞71(2)—MOVING AND ANCHORED VESSELS—NEGLIGENT LOOK-OUT.
That the lookout on a moving vessel confounded the light of an anchored vessel with others on shore five miles distant does not relieve her from the charge of negligence, nor from liability for a collision with the anchored vessel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ☞71(2).]

In Admiralty. Suit for collision by Joseph Robinson, master of the British steamship Begonia, against the American Steamship John G. McCullough, Lars P. Nelson, master, with cross-libel against the Begonia. Decree against the John G. McCullough.

Hughes, Little & Seawell, of Norfolk, Va., for the Begonia.
Harrington, Bigham & Englar and T. Catesby Jones, all of New York City, and J. Westmore Willcox, of Norfolk, Va., for the John G. McCullough.

WADDILL, District Judge. On the night of the 2d of December, 1915, about 12 o'clock, the Begonia, a British steamship, 345 feet long, and 46 feet beam, bound for Newport News, came to anchor about a mile to the southward and eastward of Thimble Light, near Black Buoy No. 13, in 8½ fathoms of water. On the morning of the 3d of December, 1915, about 3:30 o'clock, the American steamship John G. McCullough, 253 feet 4 inches long, 40 feet 2 inches beam, also bound for Newport News, collided with the Begonia thus lying at anchor, causing serious injury, and to recover which this libel was filed.

The case turns upon the propriety of the place of anchorage of the Begonia, whether her anchor lights were properly set and burning, whether the McCullough had a proper and vigilant lookout, and whether she could have seen and observed the presence of the Begonia in time to avoid the collision. The conclusion of the court on these questions is:

[1] First. That the Begonia cannot be held to be at fault in anchoring where she did under the law (30 Stat. 1152, § 15), particularly as settled in this circuit. The Job H. Jackson (D. C.) 144 Fed. 900, 901; The Hilton (D. C.) 213 Fed. 997, 1000; The Caldy, 153 Fed. 837, 840, 83 C. C. A. 19; The Margaret J. Sanford (D. C.) 203 Fed. 331; Id., 213 Fed. 975, 130 C. C. A. 381. The last citation is the decision of the Circuit Court of Appeals of this circuit, and to that case, and the cases therein cited, reference is made, as giving the law applicable to the anchorage of vessels, which is briefly to the effect that it was not the purpose of the act of Congress in question to absolutely forbid anchoring in navigable streams, other than at such places as would necessarily prevent the passage of vessels, or obstruct them in passing, to such an ex-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tent as to make the effort to do so a dangerous maneuver, and that if a vessel anchored at a point in the channel where, notwithstanding such anchorage, other vessels navigating with the care the situation required, could safely pass, then she neither violated the statute, nor rendered herself liable under the general rules applicable to navigation, even though in some degree she obstructed the channel.

Clearly the Begonia, in the absence of any action on the part of the government designating anchorage grounds, should not be held liable for damages because of her then location, with deep water on each side of her for a mile or more. The designation of anchorage grounds in the waters of Chesapeake Bay and tributaries, by the proper authorities of the government, would greatly relieve the hazards of navigation, and until the same is done each case must be determined upon its own peculiar facts and circumstances under the decisions of this judicial circuit mentioned above.

[2, 3] Second. The lights of the Begonia were at the time of the collision, sufficient to have warned and admonished the navigator of the McCullough and her lookout of the presence of the anchored vessel in time to avoid the collision, had her officers exercised proper diligence on their part. They admit having seen the lights—the lookout as far as a mile away—and the vessel will not be excused for her failure to take proper warning therefrom, although her lookout may have confounded the Begonia's lights with lights on shore five miles or more away. The Emily A. Foote (D. C.) 73 Fed. 508; The Richmond (D. C.) 114 Fed. 208; Foster v. Merchants' & Miners' Transportation Co. (D. C.) 134 Fed. 965, 968, 969; The Europe, 190 Fed. 475, 478, 479, 111 C. C. A. 307.

Third. The Begonia, at anchor, had the right under the circumstances of this case to assume that she would not be run into, and she should therefore be held free from fault for the collision, and a decree will be entered so determining, and that the McCullough was solely responsible for the accident.