## THE SEABOARD.

### THE J. A. ROE.

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

#### No. 67.

1. Collision ⇐⇒71(3)—Mooring barges in tandem behind stakeboat, so as to impede navigation, held negligence.

   Where a stakeboat fastened barges in tandem to its stern, so that they extended into the channel, impeding navigation, and a steamer collided with one of them, *held* that the stakeboat was at fault.

2. Collision ⇐⇒71(2)—Steamer not checking speed on seeing light held at fault.

   Where a steamer saw a light displayed by a moored barge, but mistook it for the signal of another boat, and proceeded at hooked-up speed with the light directly in front of her, *held*, that steamer was at fault for colliding with barge.

3. Collision ⇐⇒71(3)—Barge moored by stakeboat so as to drift into channel not at fault.

   Where a barge was moored to the stern of a stakeboat, so as to drift with the wind into the channel, *held*, that she was not at fault for a resulting collision with a steamer, and that her faulty position was due entirely to the stakeboat.

---

⇐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Collision ⬅➙144—Damages divided between joint tort-feasors.**
    Where a stakeboat and a steamer were joint tort-feasors in injuries sustained by a barge, which the steamer collided with, *held*, that barge's damages should be divided equally between the tort-feasors.

    Appeal from the District Court of the United States for the Southern District of New York.

    Libel by the Connecticut Transportation Company against the steamer Seaboard, claimed by the Hartford & New York Transportation Company, in which the barge J. A. Roe, owned by Cleary Bros., and Charles H. McWilliams and B. F. Kellers, as owners of the Blue Line stakeboat, were interpleaded under the fifty-ninth rule. Decree for libelant against the stakeboat owners, and they appeal. Affirmed, as modified.

    Herbert Green, of New York City, for appellants.
    Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for libelant appellee.
    Haight, Sandford, Smith & Griffin, of New York City (Herbert K. Stockton, of New York City, of counsel), for claimant appellee.
    Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for other appellees.

    Before ROGERS, HOUGH, and MANTON, Circuit Judges.

    MANTON, Circuit Judge. The Blue Line stakeboat, a tug which had been dismantled, except that the deckhouse was retained, owned by McWilliams and Kellers, was used for mooring barges in the Bridgeport Harbor on and prior to October 26, 1916. On the night in question, which was dark, after 3 a. m., the barge Donald was tied up astern of the stakeboat, with the barge J. A. Roe astern of her. The Donald had a light, and the Roe showed a light on a pole at her stern. This tandem was stretched out across the channel. The Donald was about 116.5 feet long, and the Roe was about 112.9 feet long. Both were light. A southwest wind drifted the stakeboat near the west edge of the channel, and the barges with their fasts drifted across the channel. The tide was ebb and tended to carry them somewhat down against the wind. It is claimed that there was a light on the stern of the Donald, but that this was not burning at the time of the collision. The channel was 17 feet deep and 200 feet wide, and runs southeast from a point above the Seaboard's pier to a point below the place of collision. The stakeboat's location was on the west side of the channel, about a quarter of a mile below Fairest Point. The Seaboard left her pier on the Poquonock river, Bridgeport, about 3 a. m., and proceeded down through the channel. The lights of the stakeboat on her starboard hand and the white light on her port hand were seen, and the navigator took the latter to be that of a vessel anchored on the east side of the channel.

    The captain of the Seaboard was in the pilot house directing navigation. His pilot and the man at the wheel were also there, and the

lookout forward. They testified that they expected the stakeboat to be very near the westerly edge of the channel. The captain testified that he had frequently seen two or more boats trailing out from the stakeboat into the channel, and that occasionally he had put his stem up against them and shoved them out of the way, so as to permit of his going by. He was going under one bell until he got about 200 feet from Fairest Point. This was about half a mile from the place of collision. He then hooked up. He had the stakeboat on the starboard hand, and a bright light on the east side of the channel further down. He says he mistook this to be an anchored schooner, and, with his boat in mid-channel, he ported not over half a point, and, proceeding at increased speed, then discovered the presence of the barge Donald. He immediately stopped and rang to go back, and says these orders were executed as quickly as they could be. He estimates his distance, when this occurred, as 800 feet away from the barges. When he actually saw the Donald, he was but 4 or 5 feet away from her, with his own vessel going at his estimated speed of 4 knots. He says he could not stop, and therefore could not avoid striking the barge Donald, which he did with a very heavy blow.

On these facts, the court below entered a decree against the owners of the stakeboat and against the owners of the Roe, and in favor of the barge Donald for half damages in the order named. The court below held that the privileges of the stakeboat were regulated by the harbor master of Bridgeport; that the Donald was at fault for not carrying a light; and that, since the stakeboat owners so moored the boats as to permit them to stretch across the channel obstructing navigation, they are primarily liable for the damage sustained. The court found that the captain of the stakeboat placed the barges in this position.

[1] We agree with the court below that so placing the two boats tandem behind the stakeboat was an impediment to navigation in the channel. We think this was a fault for which the stakeboat owners should be held responsible. In the absence of federal or state legislation in relation to the anchorage of the stakeboat, the local authorities are controlling. But it appears that the Donald was made fast alongside the starboard side of the stakeboat, and later in the day she was moved from alongside the stakeboat and made fast to the stern of the stakeboat by direction of the master of the stakeboat. The scow Roe was likewise made fast under the stern of the Donald. For thus mooring these boats, the captain of the stakeboat is responsible.

[2, 3] The court below found the Donald exhibited a while light on her pole on the stern up to 2:30 a. m., but it went out before the Seaboard came down the channel. The Donald was less than 150 feet in length. But she was at anchor and came within the requirement of Inland Rule 11 (Comp. St. § 7849), which reads:

"A vessel under 150 feet in length, when at anchor, shall carry forward, where it can be best seen, but at a height not exceeding 20 feet above the hull, a white light in a lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of at least one mile."

The master and quartermaster of the Seaboard, who were in the pilot house, state that at the time of the collision there was a light burning on the bow of the Donald. This we find as a fact, and it was all that was required of her owners. If the Inland Rule 11 applied to a vessel of this type, exhibiting such a light complied with the rule; and we think she did so.

We think the Seaboard, in navigating as she did, was also at fault in bringing about the collision. The claim is that she was unable to stop her headway in time, to avoid the collision. She struck the Donald a hard blow, and this must have been due to the fact that, after being hooked up, she was going at considerable speed. It is conceded that the navigator saw the light, but the claim that he mistook the signal for another boat on the opposite side of the channel does not excuse the vessel from fault. We think the Seaboard was at fault in undertaking to go at hooked up speed, with a light directly in front of her. Due care and caution would have avoided the collision. The Yucatan, 226 Fed. 437, 141 C. C. A. 267; The New York, 167 Fed. 315, 92 C. C. A. 627. On the testimony of her own master, she saw the light in ample time to have avoided the collision. We likewise think that the Donald, placed as she was by the captain of the stakeboat, in such a position as to drift with the wind into the channel, was not at fault, and that her faulty position was due solely to the captain of the stakeboat. John G. McCullough (D. C.) 232 Fed. 637; Pocohontas (D. C.) 217 Fed. 135. For the reasons which absolve the Donald from liability, we also think no liability attaches to the Roe.

[4] The stakeboat was a joint tort-feasor with the Seaboard and full damages should be divided between both vessels. McWilliams v. S. S. Sif (C. C. A., Second Circuit, decided April 14, 1920) 266 Fed. 166; Eugene F. Moran, 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. 600.

The court below is directed to modify the decree by awarding full damages to the Donald against the Seaboard and the stakeboat owners, but without costs in this court.