## THE ST. LOUIS.

### Petition of PENNSYLVANIA R. CO.

District Court, S. D. New York. February 7, 1928.

Burlington, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for petitioner.

Bigham, Englar & Jones, of New York City (Charles W. Hagen, of New York City, of counsel); for damage claimants Clyde Lighterage Co. and Richmond-New York Steamship Co.

Edward J. McCrossin, of New York City (Charles A. MacDonald, of New York City, of counsel), for claimant Johansen.

WINSLOW, District Judge. ▋ It is conceded that the St. Louis had the right to limit its liability. The burden of the proof as to the merits is, therefore, on the claimant, and not on the petitioner for limitation. The claimant is really in the position of a libelant. In re Davidson S. S. Co. (D. C.) 133 F. 411.

▋ The record clearly indicates to my mind that this was a crossing situation. The Henry C. Rowe was the burdened vessel, and in duty bound to keep out of the way of the ferryboat St. Louis. The master of the Rowe, on the stand, testified, in substance, that he knew it was a crossing situation, and that his boat was the burdened vessel. He had seen the St. Louis in ample time, and knew that she was a ferryboat headed toward her New York slip.

The demeanor of the master of the Rowe while on the witness stand, and his answers, indicated clearly that there was no doubt in his mind that he had been seriously at fault. His only excuse, apparently, is that he "thought" that the St. Louis would allow him to cross her bow, although he had not received any answer to his signal asking for such permission. He seemed to think, also, that, because other navigators had been guilty of the same disregard of the rules and escaped accident, he could, with impunity, do likewise.

His testimony and manner while on the stand are quite in accord with the utter lack of even a semblance of discipline or diligence on board his boat. At the time of the collision, or just a moment before, this master was alone in the pilot house, and no lookout or other person was anywhere on deck. The crew were in the galley, eating. One witness, who says he was a lookout, had, without permission, left his place on deck and joined the other members of the crew in the galley. No one took his place. It is hard to conceive of a situation showing a greater disregard of the conditions of congested navigation at the point where the accident happened. The

Rowe continued on at full speed, although she had not had any answer to her alleged two-blast signal to the St. Louis, and took it for granted that she could thus continue without regard to the privileged vessel's course.

But the claimant says that, even though the case presented a crossing situation originally, it became, just before the collision, a case of special circumstance. The St. Louis stopped her engines to permit a tug and car-float, which were coming up the river, to pass between the ferryboat and the course then being pursued by the Henry C. Rowe. The claimant argues that the accident was due to the St. Louis resuming her speed after the passage of the car float.

I do not think the situation was changed by the intervention of the car float. The St. Louis continued to "keep her course and speed." It has been well said that "course" does not mean actual compass direction of the heading of the vessel, and, of course, the question of speed is one that may be modified, to avoid some danger of navigation. It has also been well said that it is the maneuver in which the vessel is engaged that bears on the situation. The burdened vessel ought to be aware of the maneuver which is attempted to be carried out. As Judge Hand said in The Napoli (D. C.) 12 F.(2d) 130: "The whole theory is that the yielding vessel shall be able to rely in her navigation upon what the holding-on vessel will do." The Norfolk (D. C.) 297 F. 251, 255: "It may be admitted that a change of speed is sometimes rendered necessary by the presence of a third vessel, for which provision must be made. In such cases, the giving-way vessel has knowledge, or should have knowledge, of the presumable course and speed of the holding-on vessel, and must govern her actions accordingly."

The record is far from satisfactory as to whether or not the Rowe had sufficient lights, or, if she had, whether the glass had been properly cleaned, so as to permit the lights to be readily seen. But the court's conclusion as to the Rowe's negligence renders it unnecessary to determine the fact.

The claimants further argue that the ferryboat failed to stand by, as required by law. I do not believe the evidence justifies that conclusion, and, in view of the collision, I do not think that anything that might have been done by the ferryboat would have prevented the loss of life. Tugboats, easily handled, were at the scene almost immediately, and rendered assistance more quickly than the larger and more clumsy ferryboat was able to do. Even if there had been a violation of the statute requiring the boat to stand by, such violation does not make the boat responsible for the collision itself. The Hercules (C. C. A.) 80 F. 998.

After listening to the witnesses, and noting their demeanor while testifying, as well as the things which they testified to, the conclusion is inescapable that the Rowe was solely at fault. Decree is directed, exonerating the petitioner from any liability, and holding the Rowe solely at fault.