## THE CRANFORD. THE CUMBERLAND. Appeal of CENTRAL R. CO. OF NEW JERSEY et al.

Circuit Court of Appeals, Second Circuit.

July 2, 1928.

No. 330.

1. Collision ⬡⟲90—Vessel having another ship on starboard hand was obliged to navigate in accordance with starboard hand rule (Inland Rules, arts. 19, 22, 23. [33 USCA §§ 204, 207, 208]).

Under Inland Rules, arts. 19, 22, 23 (33 USCA §§ 204, 207, 208; Comp. St. §§ 7893, 7896, 7897), vessel having another ship on starboard hand was obliged to navigate in accordance with starboard hand rule and remained at all times burdened vessel.

2. Collision ⬡⟲93—Ferryboat, attempting to cross ahead of vessel, in violation of starboard hand rule, held solely at fault in resulting collision (Inland Rules, arts. 19, 22, 23 [33 USCA §§ 204, 207, 208]).

Ferryboat, attempting to cross ahead of vessel on starboard hand, in violation of Inland Rules, arts. 19, 22, 23 (33 USCA §§ 204, 207, 208; Comp. St. §§ 7893, 7896, 7897), requiring navigation in accordance with starboard hand rule, held solely at fault in resulting collision.

3. Collision ⬡⟲93—Vessel proceeding down stream held not at fault in collision with ferryboat violating starboard hand rule, because proceeding in slight circling course.

Vessel proceeding down stream held not at fault, in collision with ferryboat violating starboard hand rule, because of fact that it was proceeding in a slight circling course to middle of river; course being obvious to any one who looked, exercising reasonable care.

L. Hand, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

Separate libels and petitions by the Central Railroad Company of New Jersey, as

owner of the ferryboat Cranford and the Eastern Steamship Lines, Inc., as owner of the steamship Cumberland, for limitation of liability. Decree limiting their respective liabilities, and holding both vessels at fault, and both parties appeal. Decree modified.

Appeal from the District Court for the Southern District of New York. The Central Railroad Company of New Jersey, as owner of the ferryboat Cranford, petitioned for limitation of liability of damages caused by a collision between it and the steamship Cumberland. Answers were filed by the owners of the Cumberland and by certain passengers who were injured or suffered property loss as a result of the collision. The Eastern Steamship Lines, Inc., as owner of the steamship Cumberland, also petitioned for limitation of its liability. To this petition answers were filed by the Central Railroad Company of New Jersey and certain passengers who sustained personal injuries and property loss. A decree limiting their respective liabilities and holding both vessels at fault was entered. Both appeal. Decree modified.

Macklin, Brown, Lenahan & Speer, of New York City (J. Dudley Eggleston and Horace L. Cheyney, both of New York City, of counsel), for appellants.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and W. Parker Sedgwick, both of New York City, of counsel), for the Cumberland.

William·F. Purdy, of New York City, for appellees Rasmussen and Baker.

Kelly & Blinn, of New York City, for appellees Gilson, Walker & Maycock.

Bernard Aronson, of New York City, for appellee Roberts.

Robert Newton Crane, of Plainfield, N. J., for appellees Lerman, Russ, Smith, Beirn & Putnam.

Joseph J. Mutnick, of Plainfield, N. J. (Eugene E. Kelly, of New York City, of counsel), for appellees Abrams.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. On December 15, 1925, the ferryboat Cranford left her slip at Liberty street, New York, at 5 p. m., bound for Communipaw, N. J. The evening was clear, but growing dark, although the outline of vessels and the opposite shore could be seen. When she left her slip, a tug with a car float, going up the river close to the New York shore, required her to stop. After the passage of the car float, the ferry continued full speed ahead, directing her course under the stern of a Morgan Line steamship which was bound down in the middle of the river, just above Liberty street. Since there was little tide, the Cranford headed slightly down the river to cross to the New Jersey side, because Communipaw is about a mile south of the Liberty street slip. After passing under the stern of the car float, the red light of the steamship Cumberland was seen off the starboard bow, well out toward the middle of the river and somewhat astern of the Morgan liner. The Cranford blew a signal of two whistles, asking permission to cross her bow. The Cumberland did not reply to this signal, and at no time was permission granted to cross her bow.

It is said that then the Cumberland pointed toward the New York shore under the stern of the ferryboat and showed both side lights, and at the same time the captain said he blew the Cumberland a second signal of two whistles. Of course, if this change of heading was made by the Cumberland, there was no occasion for another signal of two whistles, for it was an indication that she was carrying out the maneuver for which he had already signaled. But the Cranford's witnesses testified that immediately the second signal of two whistles was answered with one, and that the Cumberland shut in her green light and followed out toward the middle of the river. At this time both vessels blew alarm whistles, but the Cranford continued full speed ahead until she was about 200 feet away from the Cumberland, when her engines were put full speed astern, about 15 or 20 seconds before the collision. The quartermaster of the Cranford said the reason the green light of the Cumberland showed up with the red light was probably due to the movement of his vessel toward the middle of the river, bringing his vessel across the steamship's course. He explained that the captain of the Cranford thought he could cross the bow of the Cumberland and was taking a chance of so doing.

But it is quite clear that the Cumberland, which had left Pier 31, North River, bound for Portland, Me., came out into the river bow first and headed down after she came from the pier, her wheel put to starboard and she straightened down the stream off the pier heads. When above Pier 20, she stopped her engines, as there were two car floats ahead in charge of tugs. One of these subsequently passed from the port to the starboard side. The other stayed in-

shore and was left on the port side. By a clear preponderance of proof, it was established that the Cumberland never headed in on the New York piers, and after stopping for the car floats she went full speed ahead; the wheel being put slightly to port in order to go out into the middle of the river, which would take her away from the piers. After her maneuver to go to starboard to the middle of the river and under way, the Cranford was sighted 3½ or 4 points on the port bow leaving her slip. One whistle was blown to her, to which she replied with two, whereupon one whistle was blown by the Cumberland, to which the Cranford replied with two. Thereupon the Cumberland blew her alarm whistles and repeated with her one whistle signal, and the ferryboat replied with two and an alarm. The engines of the steamship were then put full speed astern and her wheel hard-aport in an effort to avoid the collision, which ensued about one minute later near the centre of the river.

[1] The Cranford had the Cumberland on her starboard hand and was obliged to navigate in accordance with the starboard hand rule. Articles 19, 22, and 23 of the Inland Rules, Act June 7, 1897 (33 USCA §§ 204, 207, 208; Comp. St. §§ 7893, 7896, 7897). The Cranford at all times remained the burdened vessel, and the Cumberland was the privileged vessel. The preponderance of the evidence established that the Cumberland was at all times showing her red light to the Cranford, as her quartermaster and captain admitted, and she could not have been heading under the stern of the ferryboat. It was obvious and clear to any lookout on the Cranford that the Cumberland was bound downstream as her course. She did not, by signal or maneuver, indicate that she was about to dock at any of the piers. With her red light and range lights showing, her starboard swing to the middle of the river should have been evident to those on the Cranford, if they were using diligence in watching.

[2] The Cranford was clearly at fault in violating the starboard hand rule, requiring her to keep out of the way of the privileged vessel. She should not have attempted to cross ahead of her. The Delaware, 161 U. S. 459, 16 S. Ct. 516, 40 L. Ed. 771; The Brittanica, 153 U. S. 130, 14 S. Ct. 795, 38 L. Ed. 660; The Binghamton (C. C. A.) 271 F. 69; The Musconetcong (C. C. A.) 255 F. 675. Her fault was so great, in persistently violating this rule, that any doubt of fault on the part of the Cumberland should be construed in her favor. City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84; The

Binghamton (C. C. A.) 271 F. 69; The Persian (C. C. A.) 224 F. 441.

But it is argued that the Cumberland was at fault because she changed her course as well as her speed. A course is not necessarily a straight course, and may be a turning or swinging one. Monasses-Romney (D. C.) 12 F.(2d) 128. There the Romney had ported gradually in a circle, and did not thereafter change her course, which was a turning and not a straight course, and the Monasses, the burdened vessel under the starboard hand rule, was held solely at fault, for it was held to be the duty of the Monasses to take notice of the character of the Romney's course. When the Cranford came out of her slip, the Cumberland was on a circling course out to the middle of the river. She had already obtained full speed ahead and was slowly porting her helm to get out there. From that time on the Cumberland did not change her course. She continued slightly swinging toward the middle of the river, with slowly increasing speed. In The Port Philip-Proteus (C. C. A.) 20 F.(2d) 729, which was a crossing situation, the privileged vessel was leaving her anchorage in lower New York, being on a circling course off the anchorage ground to head down the bay for sea. The burdened vessel was held solely at fault for violation of this rule. See, also, The Napoli (D. C.) 12 F.(2d) 130. In continuing as she did, the Cumberland was but obeying the starboard hand rule as the privileged vessel, and the Cranford's violation of the rule alone brought about the collision. Newport-Svea (C. C. A.) 15 F.(2d) 342.

[3] The court below was of the opinion that the Cumberland was also at fault because her slight circling course to the middle of the river was not obvious to the Cranford, but this view we think erroneous. If permitted, it would create uncertainty and doubt in the mind of the master of the privileged vessel as to what to do, because he would not know what was obvious to the master of the burdened vessel. No one on the Cranford thought that the Cumberland was heading or bound for a pier, and she was going down the river. She was further out than the ferryboat, showing her red light to those on the Cranford, who had the duty of keeping out of her way. Her side lights and range lights were sufficient to indicate clearly her maneuver in approaching the center of the river. The purpose of the side and range lights required by the Inland Rules is to indicate the vessel's course to another vessel keeping a proper lookout. The Cranford should have

seen the opening of the range lights of the Cumberland as she made her swing gradually off shore to the middle of the river. As stated, they did see these lights, but failed to heed the information thus given them and also to take caution. The lookout and the captain of the Cranford said the red light was never shut out from them. Although they likewise admitted seeing the range light, they did not take sufficient notice; so as to say whether there were more than one. The Cumberland had two range lights, a mast-headlight, and a range light on her after-mast. The Cumberland's course was obvious to any one who looked, exercising reasonable care. John G. McCullough (D. C.) 232 F. 637, affirmed (C. C. A.) 239 F. 111.

No rule of navigation requires a vessel to make known her maneuvers beyond the possibility of a mistake to a passing or crossing vessel. For the benefit of a vessel which was obliged to look and keep out of the way, no further action should or can be required. It was disobedience of the rules by the Cranford which brought about this collision, and she should be held solely at fault.

Decree modified accordingly.

L. HAND, Circuit Judge (dissenting in part). I agree as to the "Cranford," but I think the "Cumberland" was also at fault, for the reasons stated in the opinion of the district judge. Therefore I think the judgment should be affirmed in whole.