**THE P. R. R. NO. 18.**

**THE WASHINGTON.**

No. 102.

Circuit Court of Appeals, Second Circuit.

April 8, 1935.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, both of New York City, of counsel), for appellant.

Paul Windels, Corp. Counsel, of New York City (P. Fearson Shortridge, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This litigation arose out of a collision between two carfloats which were rounding the Battery to proceed up the East River on February 8, 1930, at about 6:40 in the morning. The weather was clear and the tide running ebb. The libelant's carfloat No. 541 was in tow of its tug P. R. R. No. 18; the other carfloat was in tow of the Delaware, Lackawanna & Western Railroad Company's tug Washington. The two flotillas were on substantially parallel courses, the Washington and her carfloat being somewhat ahead and about 200 feet further off shore than the Pennsylvania tug and carfloat. As they proceeded around the Battery, the Washington slowed down and proceeded under one bell, and the Pennsylvania, which had the smaller turning circle and had not reduced speed, began to overhaul her. Before they were quite abreast, the ferryboat John H. McCooey was observed; she was coming from Atlantic avenue, Brooklyn, and was bound for her slip at the foot of Whitehall street, Manhattan. Having the flotillas on her port hand, she was the privileged vessel as to each of them. When the McCooey was near the middle of the East River she sounded a two-blast signal, which was understood by the master of the Washington, the nearer of the two tugs, as a request that he pass ahead of the McCooey. He at once responded with two blasts, ordered his engines to full speed, and commenced to carry out the maneuver initiated by the ferryboat's signal. The Pennsylvania tug, which was then abreast of the Washington and some 200 feet nearer shore, sounded no signal but continued on, intending also to pass ahead of the ferryboat. Very shortly after the Washington's two-blast signal, the McCooey blew a one-blast signal. This indicated to the master of the Washington that the ferryboat's master had changed his mind and was asserting his privilege to cross ahead of the Washington. The latter immediately sounded an alarm, reversed her engines, and blew backing signals. The Pennsylvania tug also went full speed astern and sounded a three-blast reversing signal. The effect of reversing their engines by the two tugs was to swing the forward ends of the floats toward each other; the Pennsylvania's float, which was on the No. 18's port side, swung to starboard, while the Washington's float, which was on her starboard side,

swung to port. The McCooey cleared the Washington's float by about 25 feet. The McCooey's port side touched the forward end of the Pennsylvania float without damage to either vessel. Before the swing of the floats could be broken, they came together with resulting damage to the No. 541. The Washington's float sustained no injury. To recover for such damage the libelant brought its libel in personam against the city of New York as owner of the ferryboat, and in rem against the tug Washington, the Delaware, Lackawanna & Western Railroad Company claimant. After trial the libel was dismissed and costs were awarded to the respondent and the claimant. The libelant has appealed from so much of the decree as dismissed the libel against the city of New York and awarded the city costs. So far as the Washington is concerned, the decree is not questioned.

■ The positions of the ferryboat and the two tugs originally made a crossing situation governed by articles 19, 21, 22, and 23 of the Inland Rules (33 USCA §§ 204, 206, 207, 208). When the McCooey and the Washington exchanged two-blast passing signals, the former waived her privilege of crossing the latter's bow and the situation became as between them one of special circumstances. The Newburgh, 273 F. 436 (C. C. A. 2); The Hallgrim, 20 F. (2d) 720 (C. C. A. 2). The appellant contended below, and still contends, that it likewise became such between the McCooey and the P. R. R. No. 18, since it would have been physically impossible for the McCooey to have passed astern of the Washington but ahead of the No. 18; but the District Court held that the No. 18 remained throughout the burdened vessel, as it had made no passing agreement with the ferryboat to change their relations. With this principle we agree, but not with the application of it to exonerate the McCooey. It is conceded that at the outset the situation was a crossing one. Under the Inland Rules this fixed the rights and duties of the respective vessels. Except by agreement between them their relations could not be changed; the McCooey must hold her course and speed and the No. 18 must keep out of her way. However, the McCooey's agreement with the Washington is a very material factor in the application of these rules of navigation between the McCooey and the No. 18. Thereafter the McCooey's apparent course was not straight on, but involved either stopping or turning to star-

board so as to let the Washington cross her bow; and with respect to the No. 18 the ferryboat owed her the duty to hold this apparent course, and the No. 18 was required to govern her navigation accordingly. See The Hoboken, 59 F.(2d) 993, 995 (C. C. A. 2); Laboyteaux, Rules of the Road at Sea, 129. The ferryboat failed to hold her apparent course and speed; she attempted to change her agreement with the Washington and proceeded across the bow of that tug, necessitating the reversal of her engines which swung her float to port. Thus the McCooey violated her duty to the No. 18, and this fault was clearly a proximate cause of the collision between the two carfloats.

Counsel for the city contends that the present situation is identical with that presented to this court in The Bronx, 250 F. 843, where the ferryboat was exonerated. But there the ferryboat had not waived her privilege as to any of the burdened vessels; she had maintained her apparent course and speed, and so was without fault. The Musconetcong, 255 F. 675 (C. C. A. 2), is also relied upon, but is likewise distinguishable. There the ferryboat's two-blast signal to the Paunpeck was mistakenly understood by the Hercules to be for her and the Hercules was notified of the mistake in time to have avoided the collision. The Musconetcong was guilty of no departure from the starboard hand rules of navigation. The other authorities relied on do not require discussion.

■ It remains to consider whether the No. 18 also committed a fault which contributed to the collision. Had the No. 18 not begun the maneuver of attempting to cross the bow of the ferryboat until after the exchange of two-blast signals, she would in this connection have been as free from fault as was the Washington. But this was not the case; the dangerous situation into which the No. 18 got was not solely the result of relying upon the McCooey's apparent course and speed. She had not previously slowed, and resumed full speed only after the exchange of signals, as had the latter, but had continued at full speed, confessing her master's intention to cross the McCooey's bow even before he heard the latter's signal to the Washington. This was a fault on her part for she was the burdened vessel. The Breakwater, 155 U. S. 252, 15 S. Ct. 99, 39 L. Ed. 139; The St. Louis, 35 F.(2d) 741 (D. C. S. D. N. Y.), affirmed 35 F.(2d) 742 (C. C. A. 2); The Cranford,

27 F.(2d) 710 (C. C. A. 2), certiorari denied, 278 U. S. 647, 49 S. Ct. 82, 73 L. Ed. 560; The Lexington, 275 F. 279 (C. C. A. 2). Had she slowed before the signals, she would not have been in such close quarters when the McCooey changed her mind and proceeded ahead. While she was able to overcome the fault so as to prevent damage in her contact with the ferryboat, she cannot show that the reversing necessitated by this fault, and the consequent swing of her float to starboard, did not contribute to the collision. In this view of the No. 18's conduct, it becomes unnecessary to consider the other charges of fault urged by the city against her, namely, failure to keep clear of an overtaken vessel, the Washington, and proceeding close to the Manhattan shore in alleged violation of the East River statute.

Accordingly, both the McCooey and the No. 18 were at fault, and the decree should be modified to divide the damages between them. It is so ordered.