## THE ACADIA.

### EXNER SAND & GRAVEL CORPORATION v. EASTERN S. S. LINES, Inc.

No. 361.

Circuit Court of Appeals, Second Circuit.

Aug. 1, 1938.

Maclay & Williams, of New York City (Mark W. Maclay, of New York City, of counsel), for appellant.

John W. Van Gordon, of New York City (Aaron U. Homnick, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge. ·

The libellant is the owner of three scows which with three others were, on July 18, 1935, in tow of the tug "Dauntless No. 6" from Port Jefferson, L. I. to New York City loaded with sand and gravel. The tug had them on a bridle hawser and they were held together by tow and cross lines. The weather was clear with good visibility; the wind southwesterly; the sea smooth and the tide at flood. At about 12:35 P.M., the tow was proceeding westerly at about four miles an hour a short distance off Matimicock Point in water not less than thirty-five feet and possibly as much as fifty feet in depth. Swells were then encountered which tossed the scows about and against each other in such a manner that they sustained some damage. The court below found that the swells were created by the S. S. Acadia, a passenger steamer 407 feet long owned by the libellee, which was negligent in running on a course too near the tow at a speed of nineteen knots through the water. From an interlocutory decree against it, the libellee has appealed.

The speed and course of the Acadia have been established by positive evidence which leaves little possibility of error. She had Execution Light abeam at 12:11 p.m. on her eastbound trip up the sound at a distance of between five and six hundred feet. She then laid. her course by autogyro compass 51 degrees true and held it until Captains Island was abeam at 12:-37 when she changed it to 71 degrees true. She held that course until the gas buoy at Lloyds Neck was abeam at 12:52 when she changed to 73 degrees true. Her speed was uniform throughout this period, as already stated.

The position of the tow cannot be determined with anything approaching such accuracy. The trial judge apparently had difficulty with that and some of his findings seem to be conflicting. He finally put the distance between the Acadia and the tow when they passed each other at "less than a mile and probably something between a quarter of a mile and a mile". It has been found to have been within "about a quarter or three-eighths of a mile of the Matimicock buoy" when the Acadia passed. The nearest the Acadia's course took her to' that buoy is about one mile. We are, therefore, forced to the conclusion that the somewhat elastic finding of the trial judge as to the distance at which the Acadia passed the tow is to be taken at toward the longer limit of somewhat less than a mile and the weight of all the evidence about it places the distance at not less than three quarters of a mile.

Decision turns on whether it was negligent to pass the tow at the above mentioned distance and speed in water of the depth stated, negligence being the basis of legal liability for swell damage with the burden to prove it on the libellant. The New York, 2 Cir., 167 F. 315. In The Majestic, 2 Cir., 48 F. 730 a large steamer was held for swell damage to a tow but the passing was "considerably nearer than half a mile" (page 731) and the tow was in water described as shallow. In The Kronprinzessin Cecilie, D.C., 171 F. 574

802

the swells were also caused by a large ocean-going steamer to the injury of a tow in Greenville Channel. But neither these nor other cases are close enough on the facts to this one to be of much help.

It was fairly proved that the Acadia would raise a wave of about three feet at her maximum speed of 23 knots and one of about two feet at her speed on this occasion. It would run out to nothing in a mile and would, of course, be well levelled down at three-quarters of a mile. While there was some evidence introduced by the libellant that the swells were from six to eight feet high when they reached the tow, this in view of all the evidence is simply incredible. Much of the damage claimed, especially that to the keelsons, could hardly have been caused by swells. And the absence of proof of broken towing bitts is rather significant. It is, indeed, most unlikely that all of the claimed damage could have been caused as the libellant contends. But, however that may be, this record does not contain fair proof that in water so deep the captain of the Acadia was bound to foresee that, at the speed he was running, his ship would cause swells that would endanger the safety of a seaworthy tow passed at least three-quarters of a mile away. Consequently, negligence in respect to speed and closeness of passing was not shown. And nothing else approaching negligence was proved.

Decree reversed.