## THE NEW ENGLAND.

## THE MEITOWAX.

## HARBOR OIL TRANSPORT CO. OF CONNECTICUT v. Tug MEITOWAX et al.

No. 16337.

District Court, E. D. New York.

April 29, 1943.

Hill, Rivkins & Middleton, of New York City (Thomas H. Middleton, of New York City, of counsel), for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Frederic Conger, of New York City, of counsel), for claimant, Long Island R. Co.

GALSTON, District Judge.

During the early morning of March 18, 1941 the motor tanker New England came in collision with a carfloat in tow of the tugs Meitowax and Elmira. The New England was damaged and while acknowledging fault seeks half damages in this libel.

The tow was made up as it left the barge-float with the Meitowax having the carfloat Long Island 25 on her port side and the Long Island 16 on the starboard side; the tug Elmira was also on the starboard side. The float on the port side was about 325 feet in length and the Meitowax bow was just aft the middle of the carfloats. The tugs had two staff lights with towing lights port and starboard lights and head lights. There were four float lights on each corner of the carfloats.

It was a dark stormy night, with the wind blowing about 25 to 40 miles an hour. The tow was headed for Greenville on the New Jersey shore, and was pointing up for the light in Greenville Channel. A deck-hand was with the captain in the pilot house and no one was stationed forward on the bow of the carfloat because the wind was blowing so hard that a man there stationed, not

having anything to hold on to would have been in imminent danger of being blown overboard. There were no cars on the floats with the sea breaking over the bow of the carfloats. The tow had just passed out of the barge channel with Buoy 26 on the port side, when the master of the Meitowax saw the New England abeam between 1,200 and 1,500 feet outside, showing the green light and a white light. Hughes, on the Meitowax, said that he blew a one whistle signal. Those on the tanker deny that any signals were given. There was no response. Then Hughes saw the red light open up as though the New England were altering her course to starboard to come under the tow's stern. Presently, however, he observed the green light again with the red light shut out. Again one whistle was given by Hughes, with the New England coming on. Hughes then blew an alarm. The tow endeavored to avoid collision by swinging the bows down the river so as to bring the stern away from the on-coming New England. The maneuver was not successful and the contact took place about 10 or 15 feet from the stern of the carfloat No. 25.

It was admitted that the New England was the burdened and the Meitowax the privileged vessel. Counsel for the libellant at the opening said that he did not dispute the fault of the New England, but believed that the Meitowax was also at fault.

The New England's engineer tells a story that in substantial degree confirms that of those on the tow. He said that when he first saw the tow it was three-eighths of a mile distant, thus contradicting his own master, who though stationed in the pilot house at the time of the occurrence, said that he did not see the tow until suddenly a black object loomed ahead, moving from starboard to port about 200 feet away.

■■ There was no fault proved against the Meitowax. She was under a duty to keep her course and speed when she first sounded a one blast signal to a vessel abeam on the port side and distant about 1,200 feet which showed only a green light. See The Delaware, 161 U.S. 459, 16 S.Ct. 516, 40 L.Ed. 771. The Meitowax had every reason to believe that the New England had ample room to pass under her stern. The Boston, 2 Cir., 277 F. 36; The West Point, 2 Cir., 85 F.2d 63; and The Piankatank, 4 Cir., 87 F.2d 806. Nor was there any reason for blowing the alarm when the New England was first seen. The Meitowax indicated her intended course when she gave the one whistle signal and later repeated it.

■ Nor was the Meitowax at fault in not stationing a lookout on the deck of the carfloat. The weather conditions which prevailed would have made that hazardous, and indeed the master of the New England evidently felt the same way about his lookout, for when asked whether he had a lookout on his foredeck he replied: "No, it was too rough, so I didn't put anybody out there. The water was coming over—spray." See The Mary A. Bickel, 4 Cir., 46 F.2d 988.

■ It would seem that the collision is fully accounted for by the negligence of the New England, the burdened vessel. The City of New York, 147 U.S. 72, 13 S. Ct. 211, 37 L.Ed. 84; The Cranford, 2 Cir., 27 F.2d 710. The libel must be dismissed. Concurrently with this opinion appropriate findings of fact and conclusions of law will be filed.