## THE SCRANTON.

### THE THOMAS FLANNERY.

(Circuit Court of Appeals,. Second Circuit.   February 9, 1915.)

Nos. 167, 168.

1. COLLISION ⊜=123—SUIT FOR DAMAGES—BURDEN OF PROOF.
    The burden of proving an agreement to navigate contrary to rule is on
    the burdened vessel.
    [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 259–261; Dec.
    Dig. ⊜=123.]

2. COLLISION ⊜=42—STEAM VESSELS CROSSING—STARBOARD HAND RULE.
    A collision between a ferryboat crossing North River from the New Jer-
    sey to the New York side and a barge alongside a tug passing up near
    the New York piers *held*, on conflicting evidence, due solely to the fault
    of the ferryboat, which alleged, but failed to prove by a preponderance of
    the evidence, an agreement that she should cross to her slip ahead of
    the tug, contrary to the starboard hand rule.
    [Ed. Note.—For other cases, see Collision, Cent. Dig. § 42; Dec. Dig.
    ⊜=42.
    Collision with or between towing vessels and vessels in tow, see note to
    The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the South-
ern District of New York.

This cause comes here on appeal from so much of a final decree of
the United States District Court for the Southern District of New
York entered on February 2, 1914, in the first of the above-entitled
actions and from so much of a final decree in the second of the above-
entitled actions entered on June 18, 1914, as holds the steam tug Thom-
as Flannery responsible for the collision, which was the subject of both
actions.

The collision took place on November 15, 1911, at about 8:15 a. m. in the
North River, New York City, in front of the Barclay Street Ferry slip of the
Delaware, Lackawanna & Western Railroad Company. The collision was be-
tween the ferryboat Scranton and the barge James Murray, while the said
barge was in tow of the appellant's steam tug Thomas Flannery.

The Hudson Navigation Company, a corporation organized and existing un-
der the laws of New Jersey, is the owner of the barge James Murray. The
Delaware, Lackawanna & Western Railroad Company, a corporation organized
and existing under the laws of the state of Pennsylvania, is the sole owner
of the ferryboat Scranton. The Hudson Navigation Company filed the libel
against the ferryboat Scranton. The Delaware, Lackawanna & Western
Railroad Company then filed its petition under rule 59 in admiralty (29 Sup.
Ct. xlvi), alleging that, if any liability existed by reason of the facts set forth
in the libel, the tug Thomas Flannery was liable therefor, and it asked that
the Flannery be cited to appear and answer.

The steam tug Flannery was bound up the North River for Pier No. 44,
New York side, having in tow the said barge James Murray on her starboard
side and the barge Keeler on her port side. The tug Flannery is 80 feet in
length, and the two barges projected some 25 feet ahead of the tug's stem; the
Murray about 5 feet further than the Keeler. The barges were about 110 and
115 feet in length. The Delaware, Lackawanna & Western ferry slips are be-
tween Piers 15 and 16, New York shore.

When the steam tug and her tow reached a point abreast of Pier 14 and a
distance variously estimated at from 200 to 400 feet off the pier heads, the

⊜=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    221 F.—39

Scranton, bound from Hoboken to its Barclay Street slip, New York, then about off Pier 17 blew a signal of one whistle and stopped. The Flannery, taking this signal as intended for herself, at once answered it with one whistle and continued her course and speed. The Scranton claims that her one whistle was an affirmative answer to a one whistle for the tug Berne, which was inshore of the Scranton and turning up river, to pass under the Scranton's bow. The Scranton also claims that, prior to her one whistle, she signaled the Flannery with two whistles, which the Flannery answered with two. This the Flannery denies. When the Flannery reached a point opposite the lower corner off Pier 15, the Scranton, still about off Pier 17, blew two whistles to the Flannery and started ahead for her slip. The Flannery answered with two whistles, and stopped and backed; but, the Scranton continuing ahead, the stem of the barge Murray struck the starboard side of the Scranton, about 50 feet from her stern, damaging both the Murray and the Scranton.

Jas. J. Macklin, of New York City (James Macklin and De Lagnel Berier, both of New York City, of counsel), for appellant.

Carpenter & Park, of New York City (Henry E. Mattison, of New York City, of counsel), for appellee Hudson Navigation Co.

J. L. Seager, of New York City (A. J. McMahon, of New York City, of counsel), for appellee Delaware, L. & W. R. Co.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The court below held both the Scranton and the Flannery at fault, and therefore, under the well-established rule of the admiralty courts, has divided the loss equally between them. The Scranton has taken no appeal, but the Flannery has brought the case to this court, claiming that the decree entered in the District Court should be reversed so far as it holds the Flannery liable for the collision.

The Scranton and the Flannery were on crossing courses and the Scranton had the Flannery on her starboard side. The latter was therefore the privileged vessel and had the right to keep her speed and course. The captain of the Scranton testified that he first discovered the Flannery when the Scranton was probably abreast of Pier 19 or 20 and 1,500 feet from the Flannery which was running close to the shore about 100 feet from Pier 14. At that time he says the Scranton was about 1,000 feet off shore, and that he blew the Flannery two whistles, and that the latter vessel answered with two whistles. About that time he saw the steam tug Berne 100 feet from the ends of the piers, and a little behind him, and coming down the river. He then blew two whistles to the Berne, which meant that she was to go ahead of the Scranton. Five or six seconds later the Berne answered with one whistle and threw her wheel hard aport. "As soon as I saw that, I blew one whistle and hooked my boat in; I blew two whistles to the Flannery, and the Flannery answered, and I kept on going." The Flannery, he states, answered with two. Then he says he "hooked" his boat in and "made the slip." He was asked:

"Where was the Flannery when you exchanged the second signals between you and the Flannery?"

And he replied:

"The Flannery was on the lower end of pier 15 maybe in the middle between the two docks." "And where was your boat then?" "My boat was within

250 feet of the slip." "About a length of the boat off the slip?" "Slightly more than a length; yes, sir."

The Flannery being the privileged vessel, the captain of the Scranton admitted that, if no whistles had been blown, it would have been his duty to stop until the Flannery had passed. He admitted that he wanted the Flannery to stop and allow the Scranton to go into the slip, and also said that, if the Scranton had not slowed for the Berne, he would have gotten into the slip without any harm.

The quartermaster of the Scranton corroborated the captain of that boat, and stated that two whistles were blown by the Scranton, and promptly answered by the Flannery with two. Later the Scranton again blew two whistles to the Flannery when the latter was about a length and a half from the entrance to the Flannery slip. The evidence, however, was very conflicting.

The captain of the Flannery stated that the first signal given was one whistle blown by the Scranton, and that he blew one whistle and held his speed and course, and that when he got within 350 feet of the Scranton that boat started ahead full speed and blew two short whistles, and that he immediately stopped and backed, and knew of nothing more that he could have done to avoid the collision. He said that he heard the signal of two whistles only once, and that was when he stopped and backed. If his testimony is true, the Flannery cannot be held in fault. He is corroborated by the mate of the Flannery. The master of the Berne did not hear the signal of the two whistles which the captain of the Scranton said he blew to the Berne, nor the two he said he blew to the Flannery. A deck hand of the Scranton heard two whistles blown by his boat and answered by the Flannery, and has no recollection of any other whistles having been blown.

[1, 2] The burden of proving an agreement to navigate contrary to rule is on the burdened vessel which in this case was the Scranton. As it was her duty to slow up and allow the Flannery to keep her speed and course, if an agreement was made by the Flannery and the Scranton contrary to the rule, the burden of proving it rested on the Scranton. That burden of proof has not been sustained. The Scranton claims she blew a signal of two whistles twice, and was answered each time by the Flannery with two whistles. But the captain and mate of the Flannery both declared that they did not hear the first signal alleged to have been blown, and that they did not blow the alleged two signals in reply. If they did not blow those two whistles as alleged, then the Flannery never assented to the relinquishment of her privilege. She never agreed that the Scranton might pass across her bow.

The man at the wheel of the Flannery is presumed to know best what signals he blew, and he states that he never blew the alleged first two whistles, and in this he is corroborated. It is also true that he is contradicted. There is, however, no such preponderance of evidence in favor of the alleged agreement as the law requires. The fact that after the disputed agreement was made the Flannery continued to hold her course and speed, and proceeded from the point off Pier 14--where the master of the Scranton says she was when he blew the first two

whistles to the Flannery—to Pier 15 without any reduction in speed, substantiates the testimony of both the master and the deckhand of the Flannery that their tug did not then answer the Scranton's alleged signal with two whistles.

At the time the Scranton started ahead and blew two short whistles, the Flannery was probably 115 feet below the Scranton's course. If the Flannery was in fault at the time of the collision, it must have been because she did not stop and back as quickly as she ought to have done. But this the Scranton has not charged or proved, and the vessels were too close to make it possible for the Flannery to avoid the collision, when the signal of two whistles was blown by the Scranton just before the collision.

It is unnecessary to consider the fault of the Scranton. That she took the risk in attempting to enter her slip as she did was clear to the court below and is clear to us.

The decrees of the District Court in both actions must be reversed, in so far as they hold the steam tug Flannery liable for the collision.

In the action of the Hudson Navigation Company against the ferryboat Scranton and the steam tug Thomas Flannery impleaded the petition impleading the said Thomas Flannery must be dismissed, and a new decree entered adjudging that the Hudson Navigation Company recover the sum of $677.96, with interest from February 2, 1914, until paid, from the ferryboat Scranton, and that the said Scranton, her engines, etc., be condemned therefor.

In the action of the Delaware, Lackawanna & Western Railroad Company against the steam tug Thomas Flannery, the libel must be dismissed.

It is so ordered.