## THE MUSCONETCONG.

### THE HERCULES.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

#### Nos. 42, 43.

1. COLLISION ⬿98—VESSELS CROSSING—MISTAKING SIGNALS.
   A tug, with tow, passing down the Hudson on a bright day, *held* solely in fault for collision with a crossing ferryboat, which was the privileged vessel, where, although mistaking a signal of the ferryboat, she knew of the mistake in time to have resumed her proper course.

2. COLLISION ⬿93—VESSELS CROSSING—RIGHT OF PRIVILEGED VESSEL TO PROCEED.
   The privileged of two crossing vessels, although knowing that the other has taken an erroneous course, which might result in collision, on giving her warning, and if there is time for her to change her course, has a right to assume that she will do so, and is not in fault for not immediately stopping and reversing.

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty for collision by the Cornell Steamship Company against the ferryboat Musconetcong, the Delaware, Lackawanna & Western Railroad Company, claimant, and by the named Railroad Company against the steam tug Hercules, Cornell Steamboat Company claimant, with cross-libels. From the decree, each libelant appeals. Reversed.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter, of New York City, of counsel), for Cornell Steamboat Co.

Ellis W. Leavenworth, of New York City, for the Musconetcong.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On June 20, 1916, at 6:20 a. m., a clear day, with an ebb tide, the ferryboat Musconetcong, of the Delaware, Lackawanna & Western Railroad Company, left her slip at Fourteenth street, Hoboken, N. J., on its voyage to Twenty-Third street, New York City. This is about directly opposite the Hoboken slip. The master saw the Cornell Steamboat Company's tug Hercules with a scow in tow on a hawser coming down the river east of the middle, between Thirtieth and Thirty-Third streets. There was no reason to expect that the Hercules would in any way interfere with the navigation of the Musconetcong, which was the privileged vessel. When

near the middle of the river, the Musconetcong blew two whistles, intended for the ferryboat Paunpeck, which, in regular trips, runs opposite, and was bound for Hoboken. These whistles were intended for the Paunpeck only. However, the Hercules answered with a signal of two whistles. The Musconetcong immediately blew the alarm, followed by one whistle, which indicated that she did not intend her signal for the Hercules, and that she did not intend to give way to her. A collision resulted by the Hercules striking the port side of the Musconetcong about 50 feet from the bow.

The District Judge, after the trial, found the Hercules solely at fault for violation of the starboard hand rule, and exonerated the Musconetcong. On a rehearing, he later held the Musconetcong was also at fault for failing to reverse or slacken her speed at once after blowing her alarm signal, and decreed that the damages be divided.

[1] The Hercules was clearly at fault. The vessels were on crossing courses, and it was her obligation to keep out of the way of the Musconetcong. Why the Hercules should assume that the two whistles blown for the Paunpeck were intended for her is not made apparent by the testimony of the Hercules. There were no reasons why there should be navigation contrary to the rule; but, even if a mistake were made by the Hercules, she was immediately notified that there would be no agreement to navigate contrary to the rule, and even after that there was ample time for her to have avoided a collision. The Hercules at the time was headed straight down the river, coming along slowly. The Paunpeck was compelled to stop and wait for a New York Central tug, which was going down west and ahead of the Hercules, and but for this she would have crossed ahead of the Hercules, and the Musconetcong could have passed between the New York Central tug and the Hercules safely, for she was going full speed, whereas the Paunpeck had not, at that time, developed much speed. The Musconetcong had almost reached the middle of the river when the two whistles were blown, and after the collision the Paunpeck passed the Musconetcong starboard to starboard. It is apparent that the two whistles were not intended for the Hercules. The burden was upon the Hercules to establish an agreement to navigate contrary to rule. The Scranton, 221 Fed. 609, 137 C. C. A. 333. This she has not done. Indeed, after the notification of the Musconetcong by signal that there would be no change in the rule of navigation, there was still time for the Hercules to have ported or reversed, and thus to have avoided the collision. At this time she was going about 5 or 6 miles, and her proximity to the Musconetcong warrants such a conclusion.

[2] The Musconetcong cannot be held at fault for failing to reverse or slacken her speed at once after the exchange of signals. If the Hercules had obeyed the signals and the rule, the collision would have been avoided; and the Musconetcong, a privileged vessel, was entitled to assume that, although it was proposed to her to give way by the exchange of the two-whistle signals, rejection thereof by her would result in navigation in conformity to the rule. The District Judge found that the Musconetcong ran about a minute and 400 or 500 feet before she started to reverse. She was justified in letting some

time elapse, in order to ascertain whether the Hercules would continue on or would port her helm, and during this lapse of time she conformed to the law in keeping her speed and course even, though the subsequent events proved that stopping and backing would have been better. The Chicago, 125 Fed. 712, 60 C. C. A. 480; The Cygnus, 142 Fed. 85.

As pointed out in The Chicago, 125 Fed. 712, 60 C. C. A. 480, the privileged vessel should not be too quick in assuming that the burdened vessel is not going to yield to it, although its behavior may be erratic. Here, apparently, the Hercules did not change her course or speed until it was too late to avoid the collision. We think the Musconetcong was not at fault, and that the District Judge was correct in his first decision holding the Hercules solely at fault.

The decree will be reversed, and the cause remanded, with instructions to dismiss the libel against the Musconetcong, and to enter a decree against the Hercules for full damages.