### RED STAR TOWING & TRANSPORTATION CO. v. DIRECTOR GENERAL OF RAILROADS.

(Circuit Court of Appeals, Second Circuit. July 10, 1923.)

No. 230.

1. **Collision ⬗⟳37—Starboard hand rule applied though burdened vessel stopped engines to avoid third vessel.**

The rule that, when vessels are approaching on crossing courses, the one having the other on her own starboard side shall keep out of the way, applies, though the burdened vessel had stopped her engines to await the passing of a tow across her course.

2. **Collision ⬗⟳37—Crossing vessel in fault for not keeping out of the way.**

One of two crossing vessels, required by the rules to keep out of the way of the other, *held* solely in fault for a collision, where the other vessel gave the proper crossing signals and, as required, kept her course and speed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Red Star Towing & Transportation Company against the Director General of Railroads, operating the Erie Railroad. Decree for respondent, and libelant appeals. Reversed.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederick Pennell, both of New York City, of counsel), for appellant.

Park & Mattison, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The Portchester, owned by the appellant, is a steam tug 70 feet long, 21 feet beam. The Jamestown is a ferryboat owned and operated by the appellee between Hoboken, N. J., and New York. On December 6, 1918, the Portchester, light, left the Cornell stakeboat off Sixtieth street, North River, bound for Port Liberty. It was a clear night, wind light, N. W., and the tide ebb. She had on regulation lights burning brightly, and proceeded on the Jersey side about midstream. The Jamestown, about a quarter of a mile away, was on her port bow and heading across the river toward New Jersey.

The Cornell tug, with a hawser tow of nine boats, three or four in a tier, was proceeding slowly up the river against the ebb tide, a little on the Portchester's starboard bow, and 300 feet off the New Jersey pier ends. The Cornell tow was crossing the Jamestown's bow, and the ferryboat stopped her engines in order to allow the tow to clear, leaving space of 200 to 300 feet between the ferryboat and the Cornell tow. The vessels were on crossing courses, the Portchester having the ferryboat on her own port. She continued her course and speed intending to pass between the Jamestown and the Cornell tow, and when about abreast of the tier head of the tow and about 300 feet from the ferryboat, it was observed that the ferryboat was going ahead and gradually closing up the distance between her and the tow. The tug thereupon blew the ferryboat a one-blast signal, which was her second signal, the first having been blown theretofore. The ferryboat answered with alarm signals. The Portchester ported her helm, and went as far as she could, and grazed along the last boat of the tow, the ferryboat keeping in motion in the water, striking the Portchester on her port quarter, causing damages.

[1] While these facts are in conflict, we regard the testimony as supporting the statement of facts as given. Under these circumstances, the vessels were on crossing courses; the Jamestown having the Portchester on her own starboard hand. Under these circumstances, she was bound to keep out of the way of the Portchester. When the Portchester blew the Jamestown one blast, there apparently was ample room for the Portchester to pass between the Jamestown and the hawser tow; but the Portchester had the right of way and gave ample notice of intending to exercise that right by this signal. The Jamestown was bound for her slip some 500 or 600 feet off, and she should have allowed passage according to the rule. Where vessels are approaching each other on crossing courses, the vessel having the other on her own starboard hand must keep out of the way of the other vessel. And the situation is not changed because a hawser tow was in the river, crossing some distance in front of the Jamestown's bow. If the Jamestown stopped her engines, as she claims, she floated ahead, evidently still maintaining her way, and saw for the first time the Portchester about abreast of the Cornell tug, less than 300 feet away. Failure to follow the rule under these circumstances places the fault upon the Jamestown. The Transfer No. 11, 195 Fed. 497, 115 C. C. A. 407; D., L. & W. R. R. Co. v. Central R. R. of N. J., 238 Fed. 560, 151 C. C. A. 496. Stopping her engines did not affect the situation, for the starboard hand rule still applied. The Cyclops (D. C.) 45 Fed. 122.

[2] Where a vessel was killing time waiting for a customs cutter to appear, the general rule was said to be that the sailing and steering regulations still applied, and special circumstances are the exception. The Elizabeth Maersk (C. C. A.) 282 Fed. 209. Rights which may be peculiar to ferryboats and superior to other craft in the immediate vicinity of ferry slips have no application here, for the Jamestown was some 500 to 600 feet out in the river and the tow was 300 feet off the pier ends. The Hazelton (C. C. A.) 273 Fed. 815; The Boston (C. C. A.) 277 Fed. 36. Prudence in navigation required the Portchester to com-

ply with the navigation rules to keep her course and speed, unless and until an agreement to the contrary had been made. No such agreement was made, and the signals indicate an insistence by the Portchester of her rights as a privileged vessel. The Musconetcong, 255 Fed. 675, 167 C. C. A. 51; The Lexington (C. C. A.) 275 Fed. 279.

The Portchester, the privileged vessel, complied with her duty in maintaining her course and speed. The evidence discloses no circumstances which would render it necessary for her to depart from these rules, and nothing she did brought about the collision. The Pomaron (Yang-Tsze Ins. Ass'n et al. v. Furness, Withy & Co.) 215 Fed. 859, 132 C. C. A. 201. She was proceeding on a strong ebb tide under her stern at about 8 miles an hour. She blew one blast when the vessel was about a quarter of a mile away, and again blew another blast when abreast of the Cornell tug. This was at a time when it was observed the ferryboat was going ahead. There was plenty of room to pass, and, had the ferryboat master observed the rule, we think no collision would have resulted. It cannot be said that the behavior of the Jamestown gave notice to the Portchester that she did not intend to obey the rule in time for the Portchester to do something different in her navigation to avoid the collision. The Chicago, 125 Fed. 712, 60 C. C. A. 480. She could hardly have stopped; she was proceeding in accordance with the rule, with the aid of the tide and her speed of 8 miles per hour; stopping her engines at the moment of the second blast, or the alarm signal, could not have prevented the collision. We think it was error to dismiss the libel.

Decree reversed.