## THE NEWPORT.

(District Court, S. D. California. S. D. September 10, 1924.)

No. 1202.

**1. Collision ⬦⟿38—Duty of privileged vessel to maintain course and speed.**

The master of the privileged of two meeting vessels will not be held in fault for maintaining her course and speed, so long as it is possible for the other to avoid her, or until he has some distinct indication that the other vessel is about to fail in her duty.

**2. Collision ⬦⟿38—Privileged vessel held not chargeable with fault.**

The privileged of two steamships meeting at sea on a clear day held not chargeable with contributory fault for a collision between them, brought about by the gross negligence and fault of the other vessel, which had no one in the pilot house, on the bridge, or on lookout, because her master kept his course and speed, though his signals were not answered and he could see no one on duty on the other vessel.

**3. Collision ⬦⟿123 — Contributory fault must be conclusively shown.**

The burden rests on a vessel whose gross fault caused a collision to prove contributory fault affirmatively and conclusively.

In Admiralty. Suit for collision by Henry Wilson and others against the steamship Newport, J. McKinnon, master, and the Pacific Mail Steamship Company, owner and claimant, with cross libel. Decree for libelants.

Andros & Hengstler and Frederick W. Dorr, all of San Francisco, Cal., for libelants and cross-respondents.

McCutchen, Olney, Mannon & Greene and Russell A. Mackey, all of San Francisco, Cal., for respondents, cross-libelants, and claimant.

McCORMICK, District Judge. Suits in admiralty by cross-libels arising out of a collision which occurred in the open and uninterrupted sea of the Pacific Ocean at a point 12 miles westerly from Point Buchon, between the steamship Newport and the steamship Svea, in which the Newport collided with and ran into the Svea at about midships, causing the Svea to completely overturn. The collision happened at about 9:53 o'clock on the morning of November 29, 1922. The weather was clear and serene. The sea was placid, and visibility was perfect for at least 10 miles.

The Newport is an iron steamship of about 2,643 gross tons burden, engaged in passenger traffic between San Francisco, Cal., and Central American ports. At the time of the collision she was bound for Central America, and was and had been for about 30 minutes prior to the contact sailing at about 10 knots per hour on a course

south 79° east (magnetic). The Svea is a wooden steam schooner of about 618 gross tons, engaged in the lumber carrying trade between Gray's Harbor, Wash., and Southern California ports. At the moment before collision, and for one-half hour previous, she was bound for San Francisco on a course N. W. by N. ½ N. (magnetic) at a speed of about 7½ knots per hour. She was bearing about three points on the starboard bow of the Newport.

It is conceded by all parties that the course of the two steamers at and prior to the collision was such that the Svea was the privileged vessel and the Newport the burdened ship. Such being the admitted case, under the rules it was the prime duty of the Newport to keep out of the Svea's way. The Newport frankly admits negligence and liability, but invokes and seeks to have this court apply the half damage rule, because it claims that the Svea was guilty of contributory negligence in adhering to the rule too stringently.

[1] The issue for decision, therefore, is whether the steamer Svea was justified in proceeding with her course and speed until the collision. The general rule which is applicable here is announced in The Delaware, 161 U. S. 459, 16 S. Ct. 516, 40 L. Ed. 771:

"That the preferred steamer will not be held in fault for maintaining her course and speed, so long as it is possible for the other to avoid her by porting, at least in the absence of some distinct indication that she is about to fail in her duty."

[2] From a careful and extended consideration of the evidence in the suit, I am of the opinion that in this instance the Svea should not be held liable for strict compliance with the rule aforesaid. It is argued by proctors for the Newport that because both vessels, from about 9:20 a. m. until the collision and over a distance of approximately 8 miles, were clearly visible to each other, and inasmuch as the bearing of the Newport did not change or deviate, such facts in themselves were definite proof that the vessels would inevitably come into collision unless one or the other modified her course or speed; but under the evidence I am unable to say at what point, if ever, it became clear to the Svea that the Newport would not yield the right of way, or would fail in her bounden duty to pass astern of the Svea. If the navigator of the Svea had breached the rule, and the collision had still occurred, it would be very difficult for the Svea to absolve herself under the law.

The Newport was being navigated in a grossly negligent manner; in fact, it reasonably appears that there was no one at the helm, or upon the bridge, or in the pilot house of the Newport, or, in fact, a competent or any lookout on watch thereon until an instant before the collision, when the master of the Newport arrived on the bridge thereof. But I do not believe that the mere existence of these facts themselves were a clear indication to the master of the Svea that the Newport would fail to perform the duty which the law enjoined upon her of keeping clear of the Svea.

The Svea first realized that the Newport was not going to do anything when the ships were but 200 feet apart, and nothing could thereafter have been done by the Svea which would have prevented or avoided the collision with the Newport. I am satisfied, from the evidence and from the testimony of the master of the Svea, that he was always uncertain as to the activities of the Newport, and as to those in charge of her navigation, and if in such a situation he were called upon to make an assumption as to what the Newport would do, he would, in my judgment, be required to assume that a burdened steamship of her proportions, carrying many passengers and proceeding at a speed between 9 and 10 knots per hour in the open sea of the Pacific Ocean, was properly manned and officered, and that he would be required to continue such an assumption until he had clear and unmistakable indication or manifestation to the contrary. It appears that, when the ships were two miles apart the Svea blew one whistle and received no acknowledgment or response from the Newport, and that again when one mile apart the Svea blew four whistles with the same result, and that yet again, when about 200 feet apart, four blasts were again blown by the Svea, which were also unheeded by the Newport.

It is claimed that these facts must have conveyed to the master of the Svea, who was upon the bridge during the entire time, that the Newport did not intend to comply with the rules of the road. I do not think that such deduction necessarily follows. The Svea was required to hold her course and speed as long as it was possible for the Newport to avoid her by porting, or until she had some distinct notification that the Newport was about to fail in its duty. The evidence of the master of the Svea convinces me that he had no distinct, clear, and unmistakable indication that the Newport would fail in her duty until he had rightfully reached a

point where he was in extremis, and where probably a collision was unavoidable, and I am also satisfied that he then exercised his best judgment to strictly comply with the rule. This is all that he was required to do. If he had guessed as to the course or maneuvers of the Newport, he might have guessed wrong, and in such a situation he would probably have been accountable for deviating and departing from the rule of the road, which required him to keep his course and speed. I do not believe that he is required to, or should be permitted to,. guess in such a situation and emergency, for if, while lawfully navigating a privileged ship and duly observing the rules of the road, a master is placed in extremis by the gross negligence of the other ship, he will not be held accountable for a wrong decision, if he exercises his best judgment, in the light of things and conditions known to and seen by him at the time.

[3] I am not convinced that, if the Svea had stopped and reversed her engines, or changed her course, when the Newport argues that she should have done so, the collision could have been avoided. The evidence rather indicates to my mind the contrary. It is the law, clearly and uniformly established by decisions, that it was incumbent upon the Newport, where her own fault is so gross and so plainly shown as it is here, to prove affirmatively and conclusively the fault of the Svea. The Binghamton (C. C. A.) 271 F. 69. This in my opinion she has not done. As was said by the court in The Haida (D. C.) 191 F. 623: "It must always be a close question when that time comes at which the burdened vessel can by no possibility do her duty, and the time is doubly hard for the privileged vessel to find, for she has no right to change her course and speed until then." Although argument may now show by subsequent events that stopping or backing or changing course on the part of the Svea would have avoided collision, it does not prove negligence. The Musconetcong, 255 F. 675, 167 C. C. A. 51.

I have adverted to the contention of the proctors for the Newport that because the master of the Svea, looking at the bridge and pilot house of the Newport through his glasses before he blew the first four blasts, saw no activity thereon or therein, he had thereby received a clear indication that the Newport would fail in her duty as the burdened ship; but I cannot agree with this contention. The master of the Svea testified he could not definitely see into the pilot house, nor could he see the telegraph. He

2 F.(2d)—17

said that, although he looked at the Newport's bridge and saw no one, he did not know that there was or was not anyone there, and, merely because he was unable to see any one on the bridge of the Newport, he was not thereby justified in assuming that there was no one there, and that the ship was being navigated without pilot, officer, or lookout, and was not thereby justified in disobeyng the rule, which required him to maintain his course and speed until he had distinct indication that the Newport was about to fail in her duty.

I have concluded that this collision was due to the gross negligence and plain fault of the Newport, as alleged in the amended libel and answer to the cross-libel, and that the plea of contributory negligence on the part of the Svea, as claimed in the answer to amended libel and the cross-libel, has not been sustained by a preponderance of the evidence. The half damage rule is not applicable to this case. Proctors for libelants will prepare and serve upon proctors for respondents an appropriate decree in accordance with this memorandum opinion, and pursuant to the stipulation entered into in open court at the time of trial as to the measurement and assessment of damages hereunder, and will then present the same to the court for consideration.