## THE McDOUGALL.

(District Court, E. D. Louisiana, Baton Rouge Division. February 25, 1927.)

No. 144.

1. **Collision** ⟜95(1)—**Mississippi tug captain must keep out of way of tug on his starboard.**

Captain of tug, under Western River Rules, has duty of keeping out of way of tug on his starboard.

2. **Collision** ⟜95(1)—**Tug's failure to observe starboard hand rule, after agreeing to change course, held proximate cause of collision (Pilot Rules for Western Rivers, rule 9).**

Failure of tug to observe starboard hand rule after agreeing to change course *held* proximate cause of collision, and places liability on such tug in accordance with Pilot Rules for Western Rivers, rule 9.

In Admiralty. Libel by the Baton Rouge Coal & Towing Company against the tug McDougall. Decree for libelant.

H. F. Stiles, Jr. (of Terriberry, Young, Rault & Carroll), of New Orleans, La., for libelant.

Arthur A. Moreno (of Lemle, Moreno & Lemle), of New Orleans, La., for respondent.

BURNS, District Judge. The libelant, as owner of the gasoline towboat Lady Jane, claims damages for its loss by collision with the tug McDougall on December 19, 1925, at or about 11:30 p. m., in the Mississippi river, just above the city of Baton Rouge.

The evidence shows that the Lady Jane had a log barge in tow, which was lashed to her starboard side as she came downstream, destined for a wharf just above that city. Her port and starboard running lights were showing bright, but there was no starboard light on the barge, nor any other light, save a kerosene lantern carried by the deck hand who was aboard the barge. This was in violation of Pilot Rules for Western Rivers (March 1, 1924, p. 10), which require a starboard light on the forward starboard corner of the barge in tow. Her crew consisted of three men, acting, respectively, as captain, engineer, and deck hand. The one acting as captain had a license, restricted to the piloting of motor boats. All three were experienced river boatmen.

The tug McDougall had eight oil barges in tow, in duck pond formation, with three barges ahead and the remainder lashed on both sides. She showed her running lights, with two range lights overhead, and the required running lights on the port and starboard corners of the two front barges. The barges had a freeboard of less than one foot, so that the running lights, which were boxed flush with or just above the deck, showed not more than one or two feet above the surface of the water. This was in violation of the Pilot Rules for Western Rivers (March 1, 1924, p. 10), which require that such lights be displayed not less than ten feet above the surface of the water.

The McDougall was manned with a licensed captain and full crew. She had left the east bank of the river at Baton Rouge, bound for New Orleans. She headed out upstream at an angle of about 45 degrees toward the west bank, to turn downstream. When at or about midstream, she received and answered a two-blast signal from the Lady Jane, which was then slightly west of midstream, somewhat less than a half mile away.

At this juncture the McDougall was on a course at an oblique angle to that of the Lady Jane, which was then showing her starboard light. Each vessel had the other on her own starboard side. If these courses had continued, the Lady Jane would have passed under the stern of the McDougall in safety. The McDougall, however, was moving under a slow bell, and the captain of the Lady Jane, probably because he sighted other vessels downstream anchored off the east shore, toward which he was then headed, suddenly decided to change his course.

The captain of the Lady Jane had given the two-blast signal under the erroneous impression that the crossing vessel was a railroad transfer ferry, which he knew to be operated at or near that point. It was only when he approached nearer that he realized his mistake as to the identity of the vessel, which moved much more slowly than the ferry. He first rang a stop signal to his engine; then, giving a one-blast signal, which was answered by the approaching vessel, he rang up his engine full ahead, putting the wheel hard aport, intending to pass between the McDougall and the west bank.

This one-blast signal was given when the vessels were within considerably less than a half mile of each other. In his original testimony before the local inspectors, the captain of the Lady Jane fixed the distance at 500 feet. Later, when testifying for libelant, he fixed it at 1,700 feet, claiming to have revisited the scene and to have established it from fixed objects ashore. From other testimony in the record, I am satisfied that the distance was considerably more than 500 feet, though less than 1,700 feet.

At this juncture, after the one-bell signal had been exchanged, the Lady Jane had the McDougall on her own port side, and, under rule IX of the Pilot Rules for Western Rivers (March 1, 1924), had the right to hold her course and speed. The McDougall, having the Lady Jane on her own starboard side, was bound to keep out of the way by directing her course to starboard, after having agreed to the change of course by her answer with a one-blast signal.

Each side contends that the barges in tow by the other were not visible. The captain of the McDougall says that he knew the Lady Jane was a gasoline boat, because the two-blast signal that he first heard was from an air whistle. By the play of his searchlight he later knew his shore bearings and also saw the Lady Jane, which he knew was moving faster than his vessel; that, however, he did not know she had a barge in tow until the collision occurred, because there was no light on it; that, if he had known that she had a barge in tow, he would not have assumed that she could pass between his flotilla and the west bank, then distant 250 feet or less. He claims that he stopped the engine, or at least had it under a slow bell. He admits he was under headway, though moving slowly. Considering the running time of the McDougall from the east bank to the point of collision, and other evidence of record, I am constrained to resolve the conflict of evidence on this point against him. Even though it was certain that the engine was stopped, this would not be a full compliance with his duty under the rules. [1] Having the Lady Jane on his own starboard hand, it was the duty of the captain of the McDougall to keep out of its way. Knowing his bearings and distance from the shore, he should have stopped and reversed, or at least have given the danger signal to warn the vessel he was approaching. The same rule obtains in other jurisdictions. The Boston (C. C. A.) 277 F. 36, 40; Red Star Touring & Transp. Co. v. Director General of Railroads (C. C. A.) 292 F. 854.

[2] My conclusion is that the failure of the captain of the McDougall to observe the starboard hand rule, after agreeing to the changed course of the Lady Jane, was the proximate cause of the collision, and places the liability on the McDougall. Rule IX; The Edwin Slick (C. C. A.) 286 F. 43, 47.

Some of the testimony is to the effect that the Lady Jane might have been stopped within 300 feet. As a practical proposition, considering her size and power, the size and weight of the log barge in her tow, and the fact that she was coming downstream at about 8 miles per hour with the current, an attempt to stop would very probably have failed. Moreover, such an attempt would very probably have fetched her up in collision with the starboard side of the McDougall, instead of the off port corner forward, and would have been in violation of the rule referred to. The relative positions of the two vessels is best shown by the collision itself. The Lady Jane was struck on her port side at or near amidships, and impaled upon the port corner of the port side barge foremost of the McDougall tow, between which and the barge she had in tow she was crushed.

The negro captain of the Lady Jane, however ignorant and illiterate he may have been, showed by his testimony that he at least knew his right—which, indeed, was his duty under the rules, though he could not read them—to hold his course and speed until a departure from the rules became necessary to avoid a

collision. He says that he did not see the Mc-Dougall's tow of barges projecting ahead of it.

I believe the testimony of the Lady Jane's captain, who says that he did not see the barges ahead of the McDougall, or the illegally low lights on them, until he was struck, and since he was passing, seemingly safe, across the bow of the McDougall, there was presented no such menace of collision as would have justified him in changing his speed or direction.

On the whole case, I am persuaded that the liability is with the McDougall, for the reasons hereinabove recited, notwithstanding the initial failure of the owners of the Lady Jane to man her with a more intelligent and capable crew, and the failure of the crew to have the barge in tow properly lighted. Libelant's fault in respect of the quality of the crew was remote, and did not contribute directly to the collision. The fault of the Lady Jane in respect to the absence of a proper starboard light on the log barge was offset or balanced by that of the respondent in failing to place the running lights on the barges in tow at the elevation required by the rules, and where they might serve the purpose for which they were intended. It has been repeatedly held that the rule requiring lights might as well be disregarded entirely as to be only partially complied with, and then in a manner which fails to be of any real service. The Le Coq (D. C.) 10 F.(2d) 246, docket No. 17313, decided December 7, 1925.

A decree may be entered for libelant accordingly.