## THE CLARA MATTHEU.

District Court, D. Massachusetts. March 19, 1928.

No. 3642.

1. **Collision 112—Failure of vessel after collision to "stand by" raises presumption that she was in fault (33 USCA § 367).**

Failure of vessel to stand by, after a collision, and give her name and port of registry, as required by Act Sept. 4, 1890, § 1 (33 USCA § 367; Comp. St. § 7979), casts upon her the burden of proving that she was not in fault for the collision.

2. **Collision 36, 108—Vessel steering to port, after agreeing to pass port to port, held solely in fault for collision, other vessel's backing being in extremis.**

One of two vessels, meeting at night practically head on, which, after exchange of signals for passing port to port, changed her course to port instead of to starboard, and steered an erratic course, held solely in fault for collision between them; the action of the other vessel in stopping and reversing, which may have contributed to the collision being when in extremis.

In Admiralty. Libel by the United States against the Nicaraguan steamship Clara Mattheu. On intervening petition by owner of Norwegian steamship Topdalsfjord. Decree for intervener.

Putnam, Bell, Dutch & Santry, of Boston, Mass., for petitioner.

Ellen L. Buckley, Asst. U. S. Atty., of Boston, Mass.

BREWSTER, District Judge. This is a libel, brought by the United States for the forfeiture of the steamship Clara Mattheu for violation of federal laws. The vessel has been sold and the proceeds paid into the registry of this court.

The owner of the Norwegian steamship Topdalsfjord has filed an intervening petition, claiming a lien for damages resulting from a collision with the Clara Mattheu, which took place in New York harbor January 3, 1927.

The government concedes that, if the Clara Mattheu was liable, the lien of the intervening petitioner takes precedence over the rights of the United States. It becomes, therefore, necessary to first determine in this case whether the Clara Mattheu was at fault. The facts, concerning which there is no controversy, are as follows:

In the early morning of January 3, 1927, the Topdalsfjord, on a voyage from Bergen, Norway, to New York, was to the westward of Fire Island Lightship, approaching New York, with proper running lights, including range lights, set and burning. About 4:30 a. m. she sighted, substantially dead ahead and several miles distant, the white masthead light of the Clara Mattheu. Thereafter both of her side lights were seen. The Topdalsfjord altered her course 7 degrees to starboard, so as to pass port to port in compliance with the rules, and thus brought the lights well on her own port bow. Soon after this, the Clara Mattheu swung to her own port, shutting out her red light. The Topdalsfjord swung more to starboard in order to be safe. The lights of the Clara Mattheu were then broadened on the Topdalsfjord's port bow, which indicated that the vessels would pass safely. Shortly thereafter the Clara Mattheu altered her course to her own port, and suddenly drew closer to the Topdalsfjord, and, although she blew her whistle, indicating that she was to pass port to port, she kept to her course, attempting to cross the bow of the Topdalsfjord, thereby creating grave danger of collision. The Topdalsfjord at once blew three whistles and reversed her engine to full speed, but the Clara Mattheu continued ahead until her stem struck the Topdalsfjord port side aft of amidships, seriously damaging the Topdalsfjord. After the collision, the Clara Mattheu refused to give her name, although repeatedly requested so to do by the Topdalsfjord, and, without inquiring whether assistance was required by the Topdalsfjord, disappeared to the southwest in a haze, which came up soon after the collision. She was soon thereafter seized by the federal officials for violations of the customs laws, and was found to have liquor on board.

[1] The action of the Clara Mattheu in failing to observe the Act of September 4, 1890 (Comp. Stat. § 7979 [33 USCA § 367]), known as the "Stand By Act," threw upon her the burden of overcoming the presumption created by the act that the collision was caused by her wrongful act, neglect, or default. The Buenos Aires (C. C. A.) 5 F. (2d) 425.

[2] When the Clara Mattheu was first sighted, the vessels were meeting nearly "end on," and the steering rules required each to alter her course to starboard and pass port to port. It was the duty of the Clara Mattheu to avoid crossing the bow of the Topdalsfjord, if possible. Articles 18 and 22 of Inland Rules (Comp. Stat. §§ 7892, 7896 [33 USCA §§ 203, 207]). The zigzag course pursued by the Clara Mattheu, after she must have sighted the Topdalsfjord, if proper lookouts had been stationed, cannot possibly be reconciled with any idea of good navigation. She must be held to be at fault for failure to observe familiar regulations. Marsden, Collision at Sea (8th Ed.) 306; N. Y. & Liv. U. S. M. S. S. Co. v. Rumball, 21 How. 372, 16 L. Ed. 144; The Excelsior (D. C.) 102 F. 652.

The remaining question—whether the Topdalsfjord was also at fault—is in this case of little consequence, inasmuch as the amount in the registry would, in all probability, be less than one-half of the damages sustained, if the damages were to be divided; but I do not think the evidence warrants a finding or ruling that the Topdalsfjord was at fault.

The government now contends that, if the Topdalsfjord had held to its course and speed, the collision would have been avoided; but the manner in which the Clara Mattheu had been navigated created a situation which placed the vessel in extremis, and the Topdalsfjord should not be held accountable, under the circumstances, if the navigators reversed her engine when they saw that a collision was imminent. The Newport—The Svea (D. C.) 2 F.(2d) 255, 1924 A. M. C. 1285; The Vera (D. C.) 224 F. 998.

In conclusion, I find and rule that the collision was caused solely by the fault of the Clara Mattheu.