### THE HORNBY CASTLE.

### THE CODY.

District Court, S. D. Texas, at Houston.
May 19, 1928.

No. 131.

**Collision** ⬅95(4)—**Vessel, failing in effort to pass tug and vessel in narrow channel pursuant to signals exchanged held at fault in collision.**

Where vessels passing in narrow channel had exchanged passing signals by which libelant's vessel was to keep to side of channel on its starboard side, and other vessel was to execute double passing maneuver so as to clear both libelant's boat and a tug lying on its port side on the other side of the channel, passing vessel was at fault and liable for damages resulting from collision due to its sheering or faulty navigation in proceeding too slowly, notwithstanding alleged negligence of libelant's vessel in having proceeded up the channel at excessive speed.

In Admiralty. Libel by the United States, owner of the steamship Cody, against the steamship Hornby Castle. Judgment for libelant.

H. M. Holden, Dist. Atty., and Howell Ward, Asst. Dist. Atty., both of Houston, Tex., for the United States.

Lockhart, Hughes & Lockhart, of Galveston, Tex., for cross-libelant and petitioner.

HUTCHESON, District Judge. The admitted facts which furnished the setting for the collision are:

The steamship Cody, coming up the channel from Galveston to Houston at a point some little distance below Green's bayou sighted the masts of the Hornby Castle coming down the channel, and blew a long blast on her whistle, which in the Houston Ship Channel is known as the bend signal.

At that time there was a tug towing two shell barges proceeding up the channel some distance ahead of the Cody and between the Cody and the Castle, and prior thereto the Cody had blown an overtaking signal which had been answered by the tug which was making the bend by hugging the left bank.

The Hornby Castle answered the bend signal of the Cody, and immediately thereafter, the tug being on the port side of the channel, instead of the starboard side, exchanged starboard to starboard passing signals with the tug. After the exchange of signals between the tug and the Hornby Castle, the Cody blew one blast, which was answered by one blast from the Hornby Castle; the signals being for a port to port passage of the ships.

The situation of the ships and the signals exchanged required the Hornby Castle to swing out into the stream toward its port bank to pass the tug, and then swing back to its starboard bank to pass the Cody.

After the exchange of signals, the Cody, in accordance with them, proceeded ahead, hugging her starboard bank while the Hornby Castle endeavored to execute the two passings which she had by signal agreed to make.

During or after the completion of the maneuver of passing the tug, the pilot of the Hornby Castle either because the Castle took a sheer, as some testified, or because in the execution of the maneuver she took too wide a sweep around the bend, or moved too slowly, suddenly realized that he was in a dangerous position, and that he would not be able to get back to the starboard side of the channel, blew danger signals, and put his ship full speed hard astern in an unsuccessful endeavor to avoid collision. The ships came on stem to stem; both vessels being practically against the bank on the starboard side of the Cody and the port side of the Castle.

These facts are undisputed, and upon them and the rule of navigation, that in narrow channels any steam vessel shall, when it is safe and practicable, keep to that side of the fairway or middle channel which lies on the starboard side of such vessel, those for the Cody firmly stand, asking for judgment.

The La Bretagne (C. C. A.) 179 F. 286; The Amolco (C. C. A.) 283 F. 892.

In addition, they say that the Cody's position is strengthened by the fact that she was where she was as the result of passing signals, as to which the rule is absolute that a vessel may rely upon the passing signals exchanged. The Musconetcong (C. C. A.) 255 F. 676; The Haida (D. C.) 191 F. 624; The Wolsum (C. C. A.) 14 F.(2d) 371.

The Castle answers that neither the rule nor the invoked principles apply here, because the fault, as they say, was on the Cody in pressing down the channel at an unwarranted speed not anticipated by the Castle, which unduly closed and limited the space which the Castle had relied upon in which to accomplish her difficult maneuver of passing two vessels, one port to port, the other starboard to starboard, in a narrow channel. That, had the Cody observed proper precautions in the matter of her speed, had she checked her course as the Castle had a right to expect that she would, there would have been ample time and room to accomplish the maneuver without danger. They point to the log of the Cody and the testimony of the pilot as to the speed she made coming down the channel, and to the testimony of the mate of the Helen that just before the collision the Cody was going more rapidly than the Castle, and in an earnest way put forward their contention that the Cody, coming powerfully up the stream, narrowed too greatly the maneuver grounds of the Castle, and thereby brought on the collision.

It is conceded that under the circumstances the burden rests heavily on the Castle to relieve herself from fault, in view of the fact that the collision occurred where it did, after passing signals, simple and clearly understood by both, had been exchanged, respondent claiming that it has fully met this burden, libelant that not only has it not done so, but that the proof offered by libelant affirmatively establishes the contrary.

Among other evidences, the government offers the testimony of the mate of the tug Helen, which the Castle had passed just before the collision, who testified positively on direct examination: "She was around the bend, and she had stopped swinging, and it seemed like she had started toward port, taking a sheer at that time, and blowed the danger signal, and let go his anchor, and started banking up, and she sheered right into the port bank"—whereas the testimony of the pilot of the Castle was that he did not take a sheer; that he thought he was making it all right until he suddenly realized that he

did not have room, at the speed he was making, to get back on his side of the channel; that he had not felt that the maneuver was dangerous until he suddenly realized he could not make it through.

On redirect examination, the mate of the Helen gave the following testimony:

"Q. And you said that after the Hornby Castle had come around this bend that she was swinging to her starboard, evidently for the purpose of passing the Cody port to port? A. Yes.

"Q. And at that time she took a sheer and went over to the port side of the channel? A. Yes, sir.

"Q. And that is what caused her, as far as you could see, to go into the Cody was that sheer? A. Yes, sir."

On recross:

"Was that any definite sheer, or just kind of a drifting over? A. She might not have had enough way on her.

"Q. At any rate, there was a definite sheer in her movement? A. Yes, sir.

"Q. She drifted over to port to some extent? A. Yes, sir.

"Q. How far do you think she drifted? A. She just headed right in."

From their different points of view, both libelant and respondent are satisfied with the testimony, and, accepting either theory, that there was a sheer or that there was not a sheer, each claims the other at fault; the respondent asserting that, had the Cody proceeded less rapidly and with more regard for contingencies, the Castle could have made its turn without injury, whether it sheered or not, and that, taking either view of the case, the Cody is still at fault, while the libelant asserts that whether the Castle failed to execute the maneuver as it had agreed, due to its sheering or to faulty navigation in proceeding too slowly, the Cody, relying upon the status fixed by the signals and hugging its own bank as it ought to have done, cannot be held at fault under this evidence, because the collision occurred, that respondent is undertaking to have inference and presumption take the place of proof.

At the hearing, I was considerably impressed with the theory of respondent that the Cody, by pressing too rapidly down on the Castle, had negligently changed the conditions under which the passing agreement had been reached, and, having created a position of danger, it could not rely upon the contract.

Upon further reflection and consideration, I believe that the theory of respondent is but a theory, without evidence to sustain it,

and that the facts not only do not justify a finding that the Cody was proceeding too rapidly for safety, but, on the contrary, justify a finding that the Cody was proceeding as she ought to have done, and that the Castle, having made the passing agreement, and not having shown any circumstances which relieved her from it, must be found at fault and obligated to abide the consequences flowing from the breach.